## COOK v. BURNQUIST et al.

(District Court, D. Minnesota, Third Division. July 16, 1917.)

1. COURTS ⬦101—NUMBER OF JUDGES—PRELIMINARY INJUNCTION.

Judicial Code (Act March 3, 1911, c. 231) § 266, 36 Stat. 1162 (Comp. St. 1916, § 1243), providing that no interlocutory injunction suspending or restraining the enforcement, operation, or execution of any state statute shall be issued, on ground of unconstitutionality, unless the application shall be heard and determined by three judges, at least one of whom shall be a Supreme Court Justice or Circuit Judge, does not include unconstitutionality under the state Constitution, but only under the federal Constitution.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 344–350, 629.]

2. COURTS ⬦303(2)—FEDERAL COURTS—JURISDICTION—SUITS AGAINST STATE.

A suit to enjoin the members of the Minnesota Public Safety Commission from enforcing an order of such Commission, or prosecuting or threatening to prosecute for nonobservance of such order, injunction being asked upon the ground that such order is not within the purview of the statute creating the Commission, is not a suit against the state, of which federal courts are denied jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 844½.]

3. CONSTITUTIONAL LAW ⬦26—GRANT OR LIMITATION OF POWER—STATE CONSTITUTIONS.

State Constitutions are limitations, and not grants, of power.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 36–38.]

4. CONSTITUTIONAL LAW ⬦81—POLICE POWER—SCOPE AND EXTENT.

The proper extent of the exercise of the police power by a state is determined by the necessities of the situation, within constitutional limitations.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 148.]

5. INJUNCTION ⬦114(2)—PUBLIC SAFETY COMMISSION—PERSONS ENTITLED.

An order of the Minnesota Public Safety Commission, declaring it necessary and proper for the public safety, the protection of life and property, and as a matter of military expediency and necessity, that licensed saloons be closed at 10 p. m. and remain closed until 8 o'clock the following day, and providing that the city council, board of trustees, or other governing body of municipalities forthwith proceed to enact ordinances executing the provisions of such order, is not directed against any individual, and, if it orders any one to do anything, is directed only against city councils, etc., and hence an individual who has voluntarily closed his saloon at 10 p. m., and who has not been ordered by the Public Safety Commission to do anything, or been threatened in any way by it, is not entitled to an injunction restraining the enforcement of such order, as any loss suffered by him is not directly attributable to the Commission's order.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 203–210.]

6. WAR ⬦4—PRECAUTIONARY MEASURES—SAFETY COMMISSION—POWERS.

Such order was within the power granted to such Commission by Laws Minn. 1917, c. 261, § 3, providing that, in the event of war, such Commission shall have power to do all acts and things not inconsistent with the Constitution or laws of the state, or of the United States, which are necessary or proper for the public safety and the protection of life and public property, or private property requiring protection, and to do all acts and things necessary or proper, so that the military, civil, and industrial resources of the state may be most efficiently applied toward the maintenance of the defense of the state and nation, and towards the successful prosecution of such war, and it was also authorized by the specific provision of

such section that the Commission shall have power and it shall be its duty to co-operate with the military and other officers and agents of the United States government, and to aid it in the prosecution of such war and in relation to public safety so far as possible.

7. WAR ☞4—SAFETY COMMISSION—POWERS.

Laws Minn. 1917, c. 261, § 3, authorizing the Public Safety Commission to do all acts and things "non-inconsistent with the Constitution or laws of the state of Minnesota or of the United States," which are necessary and proper for the purposes therein specified, should not be narrowly construed, but as giving the power to do all things not inconsistent with the broad purposes or the underlying principles and fundamental requirements of the laws of the state.

8. CONSTITUTIONAL LAW ☞62—WAR ☞4—SAFETY COMMISSION—POWERS— STATUTORY PROVISIONS.

Laws Minn. 1917, c. 261, § 3, construed as authorizing the Public Safety Commission to require the closing of saloons at 10 p. m., is not invalid, as delegating legislative powers to such Commission, though under other statutes saloons may be kept open until 11 p. m., and until 12 p. m. under a city ordinance, as the Legislature may leave the administrative details to a board or officer, and may permit a change of administrative details by a public board or individual, even after they have been enacted into the statute, and the power in question relates simply to an administrative detail.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 94–102.]

In Equity. Suit by Phil Cook against J. A. A. Burnquist and others. On application for a preliminary injunction. Motion denied.

M. H. Boutelle and E. S. Cary, both of Minneapolis, Minn, for complainant.

Ambrose Tighe, of St. Paul, Minn., for Safety Commission.

C. D. Gould, of Minneapolis, Minn., for city of Minneapolis and its officers.

BOOTH, District Judge. This suit is brought by the plaintiff against the members of the Public Safety Commission of Minnesota, the city of Minneapolis, its mayor its chief of ·police, and its city attorney, seeking to enjoin the defendants from enforcing an order of the Commission which is known as "Order No. 7," or from enacting any ordinance or regulation enforcing the same, or from threatening to prosecute or from prosecuting for nonobservance of said Commission's order.

The motion now under consideration is a motion made on behalf of the plaintiff for a preliminary injunction, and has been heard on a verified amended bill, several exhibits which have been introduced, and some little oral testimony on behalf of plaintiff, and on behalf of defendants a return to the order to show cause, consisting of a verified answer, certain affidavits, several exhibits, and some oral testimony.

The bill of complaint sets up, among other things, the official character of the several defendants, and ·that plaintiff is, and has been for some time, the proprietor of a saloon and restaurant in the city of Minneapolis located at 25 Washington Avenue North; that he has built up a large and lucrative business, and that he has been conducting the same in accordance with the laws of the state of Minnesota and

the ordinance of the city of Minneapolis. The bill of complaint then alleges that on the 16th day of April, 1917, the Legislature of the state of Minnesota passed a certain act, which is chapter 261 of the Session Laws of 1917, entitled "An act providing for the Minnesota Public Safety Commission, defining its powers and duties in the event of war and otherwise, and appropriating money for carrying out the purposes thereof," and the bill sets forth a synopsis of the act. It next sets forth that on or about June 5th said Commission caused to be adopted a certain order designated as "Order No. 7," and served the same upon the various local officials and authorities of the state. It then sets out a synopsis of the order. It next sets forth that by various threats and otherwise the members of the Commission required the defendant mayor of the city of Minneapolis to instruct the superintendent of police of the city of Minneapolis, and through him the police force, to enforce and carry out the terms of the order, and that the order has been carried out, and that the city council is threatening to pass an ordinance enforcing the provisions of the order. It then sets out that plaintiff has obeyed this order and closed his establishment at 10 o'clock in the evening, whereas formerly he was accustomed to keep it open until 11 o'clock in the evening, in accordance with the provisions of the state law, and that by reason thereof he has suffered great loss and damage in his business. It then sets forth, first, that the act of the Legislature referred to is in contravention of the Constitution of the United States in certain specified particulars; and, second, that said act, if it is construed as authorizing the Commission to make the Order No. 7, is also in contravention of the Constitution of the state of Minnesota; and, third, that if it is construed as not authorizing the issuance of the Order No. 7, then the act of the Commission in issuing Order No. 7 is without authority of law, and is a usurpation of power; and he prays, as I have already stated, an injunction and other relief.

The answer of the defendants admits the passage of the act of the Legislature, and states certain facts and circumstances in view of which it was passed, admits the issuance of Order No. 7, and denies the other allegations of the complaint.

[1, 2] At the commencement of the argument upon the motion for a preliminary injunction, counsel for plaintiff stated that the plaintiff does not seek a preliminary injunction on the first ground stated, namely, that chapter 261 violates the provisions of the federal Constitution, but that he seeks the injunction only on the second and third grounds. With that understanding the court overruled the objection of the defendants to the jurisdiction of the court as at present organized; they claiming that, if such constitutional question was raised under the federal Constitution, at least, it required, under section 266 of the Judicial Code, the presence of three judges to constitute the court. The defendants also objected to the jurisdiction of the court as at present constituted, claiming that the word "unconstitutional," as used in section 266 of the Judicial Code, refers not merely to the federal Constitution, but also includes unconstitutionality as regards the state Constitution. That objection was also overruled. The defendants also attacked the jurisdiction of the court on the ground that, even if it should be held

that the act of the Commission complained of was not within the purview of said chapter 261, still the members could not be enjoined in the present suit, as this would be maintaining a suit against the state of Minnesota. This objection has also been overruled.

Taking up the merits of the motion, the first question is: What is it that is sought to be enjoined by plaintiff? I have already read the prayer for relief contained in the bill. It has reference to Order No. 7. Now there are a number of things in Order No. 7, about which either there is no complaint in this bill, or no showing made upon which preliminary injunction can be based. For instance, there is no complaint here as to that provision of the order covering the closing of saloons until 8 o'clock on the following day, instead of 5 o'clock on the following day; nor is there any complaint, or, if there is, there is no showing for an injunction, on the ground that no women or girls be permitted to enter such saloon, or be served therefrom at any time, because plaintiff's testimony is that he had no such trade; nor is there any complaint, or, if there is, there is no showing for an injunction, based upon the order so far as it touches dancing performances, because the evidence is that there was no such performance in the plaintiff's establishment.

[3] The really vital question in the case is this: Whether an injunction should issue against the defendants to restrain them from taking any steps to prevent the plaintiff from keeping his saloon open between the hours of 10 and 11 o'clock at night. The arguments of counsel upon this motion have taken a very wide range, and perhaps necessarily so. The question of the police powers of the state have been discussed; the nature and character and the extent of these powers; also the question of the delegation or the right of delegation of legislative power by the Legislature to other branches of the government or to administrative boards. It is not necessary, in my view of the situation, to discuss at great length any of these questions. The police power of the state of Minnesota, and indeed the police power of every state in the United States, is exceedingly broad, and the state Constitutions are simply limitations of power, and not grants of power.

[4] The question of what is a proper exercise of the police power may be determined at one time as including certain matters and excluding others, and at another time may be determined as including even those matters that theretofore had been considered as excluded. The proper extent of the exercise of the police power is determined by the necessities of the situation, within constitutional limitations.

The question of delegation of power by the Legislature, and especially legislative power to other branches of the government, to administrative boards or to individuals, has been a question that has caused a great deal of controversy in the courts, not only in the state courts, but also in the federal courts. It has been said that the Legislature makes the law, that the executive executes the law, and that the judiciary expounds or determines what the law is. Of course, that is true as a general statement; but as a matter of fact it is of little help in any particular case, because practically all the cases that arise are border line cases, and the question to be determined is whether the particular act is a legislative act, or whether it is a judicial act, or whether it is an

executive or an administrative act. This question of delegation of power is one that has received the attention of the Supreme Court of the United States, as well as the Supreme Courts of the states. The latest decision of the Supreme Court of the United States is that of First National Bank of Bay City v. Attorney General of Michigan et al., 244 U. S. 416, 37 Sup. Ct. 734, 61 L. Ed. ——, handed down on June 11th of this year, in which was involved the act of Congress, approved December 23, 1913, establishing the Federal Reserve Board (38 Stat. 251, c. 6 [Comp. St. 1916, § 9794]), and particularly section 11 (k) of the act, giving to that board authority "to grant by special permit to national banks applying therefor, when not in contravention of state or local law, the right to act as trustee, executor, administrator, or registrar of stocks and bonds under such rules and regulations as the said board may prescribe." The question arose whether or not that was a delegation of legislative power to the Federal Reserve Board, such as was not authorized by the Constitution of the United States. The Supreme Court in passing upon that question used the following language:

"Before passing to the question of procedure, we think it necessary to do no more than say that a contention which was pressed in argument, and which it may be was indirectly referred to in the opinion of the court below, that the authority given by the section to the Reserve Board was void, because conferring legislative power on that board, is so plainly adversely disposed of by many previous adjudications as to cause it to be necessary only to refer to them."

Then they refer to a number of cases, and among others to the case of the United States v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563, which was a case where Congress had passed an act with reference to the preservation of forests in the United States, and had placed the carrying out of the plan in the hands of the Secretary of Agriculture, with power to make rules and regulations, and providing that violations of those rules and regulations should be followed by punishment. It was claimed that this was giving the Secretary of Agriculture power to make a law. It was held by the Supreme Court that it was simply a delegation to him of administrative power, and although he had made rules and regulations, violation of which was followed by punishment, yet nevertheless this was not a legislative act on his part within the meaning of that term in the oft-stated principle that a legislative act could be passed by Congress only, and not by boards or by individuals.

There are many decisions in the state of Minnesota, also, as to this power of delegation, and a number of them have been referred to in arguments of counsel at this hearing. The tendency, not only in Congress, but in state Legislatures, is more and more to commit to administrative boards, or to individuals, or to some other branch of the government, administrative details. In the case of Alexander v. McInnis, 129 Minn. 167, 151 N. W. 901, the court in its opinion said, quoting from a previous decision of that court:

"The marked tendency of legislation in recent years, not only in this state, but in other states, has been, to a large degree, to break away from the theory of three separate and independent departments of government, by imposing upon

other departments duties and powers of a legislative character, which the courts have been inclined to sustain. Perhaps few, if any, cases are to be found, however, where statutes imposing purely legislative duties and powers upon the courts have been upheld; but the authorities are numerous, sustaining statutes which impose upon the courts powers involving the exercise of both judicial and legislative functions—such as the condemnation of land for public purposes, the appointment of commissioners of election in proceedings for adding territory to municipal corporations, and laying out and establishing highways. The proceedings provided for by the statute under consideration involve the exercise of both legislative and judicial powers. The question of the propriety or necessity of public ditches to drain marshy or overflowed lands is one of legislative character. The condemnation of land through which such ditches may be constructed, the assessment of damages, and the determination of the legal rights of parties affected are judicial. The exercise of all these powers is involved in proceedings under this statute."

It must be taken, then, as true in Minnesota that the tendency is more and more to leave administrative details of legislation to either some other department of the government or to boards or to individuals. It need not, however, be decided in this case whether that has been done in chapter 261, Laws 1917. It is possible that this case may be disposed of upon a much narrower basis.

Order No. 7, which is attacked, reads as follows, so far as appertains to this case:

"The Minnesota Commission of Public Safety hereby finds and declares it necessary and proper for the public safety, for the protection of life and property, and as a matter of military expediency and necessity:

"That all licensed saloons in the state of Minnesota be closed at 10 o'clock p. m., and remain closed until 8 o'clock the following day, and that no intoxicating liquors be sold, served, or otherwise disposed of therein between the hours last above stated."

"That the city council, board of trustees, or other governing body of all municipalities in the state of Minnesota forthwith proceed to enact ordinances executing the provisions of this order and prescribing suitable penalties for violations of such ordinances," etc.

[5] Narrowly considered, upon its face, this so-called Order No. 7 does not purport to be a law. It does not purport to be an ordinance. It is not directed against any individual in the state of Minnesota. There are no penalties announced in the order for nonperformance of it, or nonobservance of it. There are no threats made in the order, saying what will happen or what will not happen to persons who pay no attention to the order.

Narrowly construed, this Order No. 7 is simply an announcement of certain findings or a declaration by the Public Safety Commission that certain things are necessary and proper for public safety, for the protection of life and property, and as a matter of military expediency. If any one can be considered to have been ordered to do anything, it is the city councils, boards of trustees, or other governing bodies of municipalities in the state of Minnesota. It is possible that the grammatical construction of the order will allow that interpretation to be placed upon it, and that it is a direct order to the city council, although I think it is fairly open to argument that it is not such order, even as to the city council. But, conceding that it is an order to the city council, the council of the city of Minneapolis and the authorities of the city of Minneapolis are not here making any complaint. They are not

complaining that any threats have been issued to them, or that they have been ordered by the Public Safety Commission to do anything which they do not wish to do, or which they have not the power to do. The complaint here is by a private individual, that by this order of the Public Safety Commission he has been injured in some way in his business. He has had no direct communication from the Commission. He has voluntarily closed his saloon at 10 o'clock p. m., instead of 11 p. m. Giving this narrow construction to Order No. 7, the court would not be justified in granting the application of the plaintiff for a preliminary injunction in this case, because there is no sufficient showing made by the plaintiff that his loss, if any, is so directly attributable to any act of the Commission as would authorize an injunction to issue upon such construction of Order No. 7.

But I do not think that an injunction should issue if a much broader construction is given to Order No. 7 than I have indicated. Let us look at the law under which this Commission of Public Safety was established. It is entitled "An act providing for the Minnesota Public Safety Commission, defining its powers and duties in event of war and otherwise, and appropriating money for carrying out the purposes thereof." There are contained in that act ten sections. The first section simply is the creating part of the act, creating the Commission. The second provides for organization of the board. The fourth section grants power to the Commission to make provision for the comfort of certain persons in military and naval service, and to provide and pay for the support and maintenance of any person or persons dependent for support upon Minnesota soldiers in the military service of the state of Minnesota or of the United States, while such soldier is in service. Section 5 provides for the payment by the Commission of 50 cents per day additional pay to enlisted members of the Minnesota National Guard, for their period of service on the Mexican Border. Section 6 provides for the payment of National Guardsmen from the time of mobilization until they are mustered into the service of the United States government. Section 7 relates to enlistment, organization, and maintenance of a Home Guard.

It is thus seen that the powers conferred on the Commission are of a broad and varied character. In this case it is section 3 that is particularly attacked. Section 3 grants, in addition to the powers granted in sections 4, 5, 6, and 7, certain special powers, five in number, and also certain general powers. The special powers are not attacked in this proceeding. It is the general powers contained in the first paragraph of section 3 that are attacked. That paragraph reads as follows:

"In the event of war existing between the United States and any foreign nation, such Commission shall have power to do all acts and things non-inconsistent with the Constitution or laws of the state of Minnesota or of the United States, which are necessary or proper for the public safety and for the protection of life and public property or private property of a character as in the judgment of the Commission requires protection, and shall do and perform all acts and things necessary or proper so that the military, civil and industrial resources of the state may be most efficiently applied toward maintenance of the defense of the state and nation and toward the successful prosecution of such war, and to that end it shall have all necessary power

not herein specifically enumerated and in addition thereto the following specific powers."

That section contemplates several ends to be attained: First, the public safety is to be guarded. Protection is to be afforded to life and public property, and also to private property of such a character as in the judgment of the Commission requires protection, and, further, the Commission is ordered to do all acts and things necessary or proper so that the military, civil, and industrial resources of the state may be most efficiently applied for the maintenance of the defense of the state and nation, and toward the successful prosecution of such war.

[6] No attempt has been made here to show that the acts which are sought to be accomplished by Order No. 7 are not germane to the purposes set forth in section 3, namely, public safety and the protection of life and property, and the application of the resources of the state to accomplish certain ends. I take it that no attack can successfully be made along that line, because it goes without saying that the order here in question, if it were carried out, would have some relation at least, whether direct or indirect, to the ends sought to be attained; that is, public safety, and the protection of life and property, and the application of the resources of the state to the specific purposes. In fact, it can hardly be disputed that the relation would be direct, and the effect substantial. Nor do I think that the issuance of order No. 7 is without the purview of the provisions of chapter 261. In my judgment, said order is within special power No. 3 in section 3 of the act, and also within the powers granted in the first paragraph of section 3 of the act.

[7] The words "non-inconsistent with the * * * laws of the state of Minnesota," contained in section 3, should not be given a narrow construction, in view of the broad purposes of the act and the great emergency it was intended to meet. The words above quoted should rather be held to mean not inconsistent with the broad purposes, the underlying principles, and the fundamental requirements of the laws of Minnesota. With such a construction placed upon section 3, the Order No. 7 is well within the purview of the act.

The only question that remains in the case is whether or not the Legislature of the state of Minnesota could authorize the Commission to do the acts here in question, namely, to issue Order No. 7. It is claimed that the Legislature could not so authorize the Commission, because it would be a delegation of legislative power. As has been stated here upon the argument by counsel for the defendants, the authorities are almost overwhelming to the effect that a federal court is very loath to declare a state statute contrary to the state Constitution, when that state statute has not received an interpretation at the hands of the Supreme Court of the state. That doctrine has been announced by the Supreme Court of the United States, not only in the case of Louisville & Nashville Railroad v. Garrett, 231 U. S. 298, 34 Sup. Ct. 48, 58 L. Ed. 229, but also in the case of Prentis v. Atlantic Coast Line, 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150, also in the very recent case of Pullman Co. v. Knott, 235 U. S. 23, 35 Sup. Ct. 2, 59 L. Ed.

105, and it has also been announced numbers of times by lower courts. So that, unless it is perfectly plain on the face of it that section 3 of chapter 261 of the Statutes of Minnesota of 1917 is a delegation of legislative power, such as is forbidden or not allowed under the state Constitution, this court would hesitate to hold that statute unconstitutional.

[8] In my view of this section 3, while there may be some doubt as to just what powers are conferred on the Commission, yet I think that section 3 purports to confer merely administrative powers upon the Commission. It is claimed that the act here in question, viz. the issuance of Order No. 7, is not an administrative act, but is an exercise of legislative power. The argument of counsel for plaintiff seems to proceed along the line that, inasmuch as the statutes of the state have heretofore allowed saloons to be kept open until 11 o'clock at night, and inasmuch as the ordinance of the city of Minneapolis has allowed saloons to be kept open until 12 o'clock at night, that this provision of the statute is the law, and that this order No. 7, which provides that saloons shall close at 10 o'clock at night, undertakes to change that law; that this is legislation, and that such legislation cannot be had through this Commission. It seems to me that that argument is not sound in all respects. The Legislature of the state, in passing a law, may include in that law many administrative details, as well as the main vital provisions of the law, or it may pass a law covering a matter broadly and in general, leaving the administrative details to a board, or to certain designated persons; but the administrative details of any particular matter included in a statute still maintain their character of administrative details, and the Legislature may pass an act permitting the carrying out of a change of these administrative details to a public board or to an individual, even after they have been enacted into the statute. It seems to me that this was what was intended to be done by section 3 of chapter 261; that it was not an attempt to confer the legislative power of the state of Minnesota upon the Public Safety Commission, but was simply an attempt to confer power over administrative details in respect to matters pertaining to certain specified things. Those things are the public safety, the preservation and protection of life and property, and the efficient application of the resources of the state toward certain specified purposes. So long as the act of the Commission is simply that of administrative detail, carrying out those various matters, and looking towards those various ends described and designated in section 3, it seems to me that such act is not without authority of the statute, nor legislative in the broad sense, but rather administrative.

That being the view that I take of this law and of this order, it follows that the law is not in contravention of the state Constitution, and it follows, also, that the act of the Commission here complained of is not without the purview of the statute, chapter 261, but is within the purview of the statute; and, that being the case, the plaintiff is not entitled to a preliminary injunction, and the motion is denied.