**BUTCHER et al. v. MAYBURY, Director of Licenses.**

(District Court, W. D. Washington, S. D. September 19, 1925.)

No. 253.

**1. Physicians and surgeons ⬤⟶11(1)—Physician's right to practice a property right.**

Physician's right to practice is a property right, of which he cannot be arbitrarily deprived.

**2. Physicians and surgeons ⬤⟶1—Right to practice subject to state's police power.**

Physician's right to practice is a qualified one, held in subordination to duty of state under police power to protect public health.

**3. Constitutional law ⬤⟶81—Police power cannot be stipulated or bartered away.**

Police power cannot be stipulated or bartered away.

**4. Constitutional law ⬤⟶62—Physicians and surgeons ⬤⟶1—Legislature may prescribe qualifications and commit regulatory power to board or officer.**

Legislature may prescribe qualifications for those who practice medicine, and may regulate drugless healers, which regulatory power may be properly committed to an administrative board or officer.

**5. Constitutional law ⬤⟶199—Regulatory statutes may be made operative on those practicing prior to enactment.**

Regulatory statutes may be made operative on those engaged in practice prior to their enactment, and may make qualifications more rigid from time to time.

**6. Constitutional law ⬤⟶199—Legislature may prescribe qualifications requiring those in practice to give up occupation.**

Legislature may prescribe qualifications as to character and learning which will require those in practice to give up their occupation, subject only to limitation that regulations be reasonable and bear some relation to service to be rendered by practitioner.

**7. Physicians and surgeons ⬤⟶2—Statutory qualifications of drugless healers held not unreasonable or arbitrary.**

Legislative requirement of high school education or its equivalent and of residence course of three seasons, consisting of 36 weeks each, in a school of approved standing, as prerequisite to right to practice drugless healing, fixed by Sess. Laws Wash. 1925, p. 23, *held* not unreasonable or arbitrary.

**8. Licenses ⬤⟶38—Power of state to require a license implies power to revoke license improperly issued.**

Power of state to require a license implies power to revoke license improperly issued.

**9. Constitutional law ⬤⟶318—Physicians and surgeons ⬤⟶2—Statute fixing procedure for revocation of drugless healer's license held constitutional; "due process of law."**

Sess. Laws Wash. 1925, pp. 23-25, §§ 1-7, providing for notice and hearing to licentiate whose license is proposed to be revoked, and entitling him to compulsory attendance of witnesses, representation by counsel, and right of appeal, *held* to sufficiently afford "due process of law," under Const. U. S. Amend. 14.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Due Process of Law.]

**10. Constitutional law ⬤⟶211—Equal protection is afforded, where law operates on all alike, and does not subject individual to arbitrary exercise of governmental powers.**

Equal protection of the laws is afforded, if law involved operates on all alike, and does not subject individual to an arbitrary exercise of governmental powers.

**11. Constitutional law ⬤⟶230(1)—Statute providing method for revocation of drugless healer's license held to afford equal protection.**

Sess. Laws Wash. 1925, pp. 23-25, §§ 1-7, providing method for revocation of drugless healer's license to practice, *held* not violative of equal protection clause.

**12. Constitutional law ⬤⟶199—Act regulatory of drugless healers held not invalid as "bill of attainder."**

Sess. Laws Wash. 1925, pp. 23-25, §§ 1-7, relating to qualifications of drugless healers, and providing method for revocation of license, *held* not invalid as a bill of attainder, though under it certain licensees might be compelled to discontinue practice because of inability to meet qualifications; "bill of attainder" being

legislative act, inflicting punishment without judicial trial.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bill of Attainder.]

**13. Constitutional law �köö197—"Ex post facto law" defined.**

An "ex post facto law" is one making an act, innocent when done, criminal and inflicting punishment, or aggravating crime, making it greater than it was when committed, or which changes punishment, inflicting greater punishment than was prescribed when committed, or which alters rules of evidence and receives less or different testimony than was required to convict at time of commission of offense.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ex Post Facto.]

**14. Constitutional law �köö199—Law regulatory of drugless healers held not invalid as ex post facto.**

Sess. Laws Wash. 1925, pp. 23–25, §§ 1–7, relating to qualifications of drugless healers, and providing method for revocation of their license to practice, *held* not invalid as ex post facto law, though licenses of some might be revoked for inability to meet qualifications prescribed after granting of license.

**15. Evidence �köö83(1)—Constitutional statute may be so arbitrarily enforced as to violate individual's rights, but enforcement officers and boards presumed to act fairly.**

A constitutional statute may be enforced so arbitrarily as to violate right of party to pursue his occupation, but presumption is that boards and officers will be actuated by good motives and act fairly.

**16. Courts �köö370—Federal courts are reluctant to declare state statute violative of state Constitution, when state court of last resort has not passed on question.**

Federal courts are reluctant to declare state statute violative of state Constitution, when state court of last resort has not passed on question.

In Equity. Suit by John T. Butcher and others against Charles R. Maybury, as Director of Licenses of the State of Washington. Suit dismissed.

Plaintiffs are drugless healers, and this suit is brought to restrain the enforcement of chapter 10 of the Session Laws of Washington for 1925. This statute provides for the revocation under certain circumstances of licenses issued to drugless healers. By chapter 36 of the Session Laws of Washington for 1919 the Legislature created the board of drugless examiners. This board was authorized to issue licenses for the practice of drugless therapeutics to three classes of persons:

(1) Those who had completed a residence course of three entire sessions, of 36 weeks each, at a chartered drugless school, the entrance requirements of which are a highschool education or its equivalent.

(2) Those who, prior to the passage of the act of 1919, had attended and received diplomas from chartered drugless schools, the entrance requirements of which were a common school education or its equivalent, and who had practiced their profession for 2 years continuously in the state of Washington.

(3) Those who had been, for four years prior to the passage of the statute, engaged in the continuous practice of a drugless system mentioned in the act, 2 years of which practice must have been at one place in the state of Washington.

The applicants were in each case required to take examinations in subjects specified in the statute. The plaintiff Butcher belongs to the first of these classes, the plaintiff Goodrich to the second, and the plaintiff Wehe to the third.

The act of 1919 provided for the revocation by the board of any license for unprofessional conduct, subject to the right of appeal to the superior court within 90 days. It also provided that any license granted without full compliance with the statute might be canceled by decree of the superior court in an action brought for that purpose. The statute declared the practice of drugless therapeutics without a license to be a misdemeanor.

By section 135 of chapter 7 of the Session Laws of 1921 the board of drugless examiners is abolished, and by section 96 of the same statute its powers and duties are vested in the director of licenses. Section 103 provides for the revocation of licenses and defines a procedure for such purpose. Section 106 makes provision for an appeal to the superior court for Thurston county from any order revoking or refusing to issue or renew a license.

It appears that the plaintiff Butcher was issued a full license July 22, 1924; that on August 2, 1919, the plaintiff Goodrich was issued a limited license; that the plaintiff Wehe was granted a limited license in 1920. In June, 1922, a rule was passed providing that holders of limited sanipractic licenses could secure full licenses by presenting diplomas from sanipractic colleges and complying with other conditions. The plaintiffs Goodrich and Wehe each took a three months' course at the American University of Sanipractic, received a diploma therefrom, and applied for a full license which was granted. Neither the record nor the stat-

ute makes clear the difference between a limited and a full license, but it sufficiently appears that the limited license confers authority to practice.

Chapter 10 of the Session Laws for 1925 is "An act providing for the revocation of licenses to practice drugless healing in certain cases, defining the powers and duties of certain officers, providing penalties for violations thereof, and declaring that this Act shall take effect immediately." The first section of the statute is as follows:

"Section 1. Whenever it shall come to the attention of the director of licenses that any applicant for a license to practice any form of drugless healing in this state under the provisions of chapter 36, Laws of 1919, either with or without examination, presented with his application a diploma purporting to have been issued to such applicant by a drugless school, and a license was granted such applicant wholly or in part by reason of such diploma, and the director of licenses has reasonable ground to believe that the drugless school issuing such diploma, and the persons in charge thereof, have issued diplomas to persons who had not a high school education or its equivalent and who had not completed a residence course of three entire sessions of thirty-six weeks each in the school issuing the diploma, the director of licenses shall have the power to make and enter an order directed to such licentiate, setting forth the name of the licentiate, the date of his license and the name of the drugless school issuing the diploma upon which the license was based, and requiring such licentiate to appear before the director of licenses at his office in the city of Olympia at a time specified in the order, which shall not be less than twenty days after the service of a copy of such order upon him, and then and there to produce the diploma upon which his license was issued and produce and deliver to the director of licenses his license to practice drugless healing, and to testify under oath as to his educational qualifications at the time of his entering the school issuing the diploma and the length of his actual resident attendance at such school and all other schools for attendance at which credits were claimed. The order provided for shall be served upon such licentiate and return of service made in the manner provided by law for the service and return of summons in civil actions."

The second section provides for revocation on default of the licentiate. The third section provides for a hearing, with right to be represented by counsel and to the compulsory attendance of witnesses. Section 4 makes it the duty of the director of licenses to cancel the license at the conclusion of the hearing in case "the licentiate shall have failed to establish to the satisfaction of the director of licenses that on the date of the issuance of his diploma he had a high school education or its equivalent and had in fact completed a residence course of three entire sessions of thirty-six weeks each in the school by which such diploma was issued, or any other schools for which credits were properly allowable."

Section 5 provides for the review of the action of the director in the superior court for Thurston county. Section 6 requires the licentiate to surrender his revoked license, and section 7 provides that the remedy for revocation provided by this statute is cumulative, and shall not be deemed to amend, modify, or repeal any other provision of law for the revocation of licenses.

It is alleged in the bill that on the 8th of April, 1925, orders to show cause why their licenses should not be revoked were served on the plaintiffs, that hearings were had respectively on the 7th, 9th, and 29th of May, that as a result of said hearings the full licenses of plaintiffs were revoked, "that unless restrained from so doing the director of licenses will issue further orders and will revoke the limited licenses of the plaintiffs Goodrich and Wehe," and "that unless restrained from so doing the director of licenses will thereafter cause these plaintiffs to be prosecuted for practicing without a license."

Spencer Gray, E. E. Shields, and D. V. Halverstadt, all of Seattle, Wash., for plaintiffs.

John H. Dunbar, Atty. Gen., and E. W. Anderson, Asst. Atty. Gen., for defendant.

Before McCAMANT, Circuit Judge, and CUSHMAN and NETERER, District Judges.

McCAMANT, Circuit Judge (after stating the facts as above). The statute sought to be restrained has been before the Supreme Court of Washington for construction. State ex rel. Fryberg v. Maybury (Wash.) 236 P. 566. It is there held that on the revocation of a full license, granted under substantially the conditions set forth in the bill in this case, it is the duty of the director of licenses to return the limited license surrendered when the full license was granted. The court holds that "the right to practice is a valuable property right,"

and that "this right was one that could only be taken away * * * by appropriate proceedings calling for its revocation, or by voluntary relinquishment." It is also held that a license granted under the act of 1919 is not a contract with the state.

There is no diversity of citizenship, and the jurisdiction of this court is based wholly on the federal question raised by the bill. It is charged that chapter 10 of the Session Laws of 1925 is in violation of the first section of the Fourteenth Amendment to the Constitution of the United States, in that it deprives plaintiffs of their property without due process of law and denies them the equal protection of the laws. It is also charged that the statute is in violation of section 10 of article 1 of the Constitution, forasmuch as it "is a bill of attainder and ex post facto law." These are the only federal questions presented.

The effect of the act of 1925, if it is free from constitutional objection, is to amend by implication the act of 1919 in its application to the second class of licentiates, of whom the plaintiff Goodrich is one. The new statute lays upon this class the requirement of a high school education or its equivalent and attendance for three entire sessions, of 36 weeks each, in a drugless school. The statute provides a new procedure for the revocation of licenses granted wholly or in part because of diplomas. It does not change the qualifications demanded by the act of 1919 of the first and third classes of applicants. The plaintiff Wehe received her original limited license on the strength of her continuous practice of her profession for 12 years and of the examination she passed. The new statute affects her only because of the full license granted her in part because of her postgraduate diploma from the American University of Saniprac-tic. The plaintiff Butcher is affected by the act of 1925 only because it changes the procedure for the revocation of licenses.

[1] The right of a physician to practice his profession is a property right, of which he cannot be arbitrarily deprived. Dent v. West Virginia, 129 U. S. 114, 123, 124, 9 S. Ct. 231, 32 L. Ed. 623; Douglas v. Noble, 261 U. S. 165, 43 S. Ct. 303, 67 L. Ed. 590; Bogni v. Perotti, 224 Mass. 152, 112 N. E. 853, 855, L. R. A. 1916F, 831; Lawrence v. Board of Registration, 239 Mass. 424, 132 N. E. 174, 176; State v. Medical Board, 32 Minn. 324, 20 N. W. 238, 50 Am. Rep. 575, 576.

[2, 3] The right is a qualified one, and is held in subordination to the duty of the state under the police power to protect the public health. Hawker v. New York, 170 U. S. 189, 18 S. Ct. 573, 42 L. Ed. 1002, Lawrence v. Board of Registration, 239 Mass. 424, 132 N. E. 174, 176. The police power cannot be stipulated or bartered away. Gray v. Connecticut, 159 U. S. 74, 15 S. Ct. 985, 40 L. Ed. 80. In State v. Hovorka, 100 Minn. 249, 252, 110 N. W. 870, 871, 8 L. R. A. (N. S.) 1273, 1275 (10 Ann. Cas. 398) it is said:

"No person can acquire a vested right to continue, when once licensed, in a business, trade, or occupation which is subject to legislative control and regulation under the police power. The rights and liberty of the citizen are all held in subordination to that governmental prerogative, and to such reasonable regulations and restrictions as the Legislature may from time to time prescribe. * * * Regulations so prescribed and conformed to by the citizen may be subsequently changed or modified by the Legislature, whenever public interest require it, without subjecting its action to the charge of interfering with contract or vested rights. This is elementary."

In a note found on page 1273 of 8 L. R. A. (N. S.) the author says:

"The granting of a license in such cases is merely the means taken by the state, in the exercise of its police power, to regulate and restrict the engaging in certain professions and occupations for the public good, and confers no rights whatever, in the way of a contract with the state, upon the licensee. He takes the same subject to the right of the state, at any time that the public good demands, to make further restrictions and regulations thereto; and, if such restrictions and regulations are reasonable, they will be upheld, even though they may actually prohibit some people from further engaging in such occupations or professions under a license previously granted."

[4] The authorities hold without dissent that it is competent for the Legislature to prescribe qualifications for those who are to practice medicine and thus to assure that they shall possess the requisite character and learning. Dent v. West Virginia, 129 U. S. 114, 122, 9 S. Ct. 231, 32 L. Ed. 623; Hawker v. New York, 170 U. S. 189, 18 S. Ct. 573, 42 L. Ed. 1002; State v. State Medical Board, 32 Minn. 324, 20 N. W. 238, 50 Am. Rep. 575, 577. The regulation of drugless healers is a proper exercise of the police power. Crane v. Johnson, 242 U. S. 339, 37 S. Ct. 176, 61 L. Ed. 348, Ann. Cas. 1917B, 796. The regulatory power of

the state may be properly committed to an administrative board or officer. Douglas v. Noble, 261 U. S. 165, 170, 43 S. Ct. 303, 67 L. Ed. 590; State v. State Medical Board, 32 Minn. 324, 20 N. W. 238, 50 Am. Rep. 575, 577.

[5] These regulatory statutes may be made operative on those engaged in practice prior to the enactment of the statutes. Dent v. West Virginia, 129 U. S. 114, 122, 9 S. Ct. 231, 32 L. Ed. 623; Collins v. Texas, 223 U. S. 288, 295, 32 S. Ct. 286, 56 L. Ed. 439; Lawrence v. Board of Registration, 239 Mass. 424, 132 N. E. 174, 176. The state may change the qualifications from time to time, making them more rigid. Dent v. West Virginia, 129 U. S. 114, 122, 9 S. Ct. 231, 32 L. Ed. 623; Gray v. Connecticut, 159 U. S. 74, 15 S. Ct. 985, 40 L. Ed. 80; State v. Hovorka, 100 Minn. 249, 110 N. W. 870, 8 L. R. A. (N. S.) 1273, 1275, 10 Ann. Cas. 398.

[6] The Legislature may prescribe qualifications, both as to character and learning, which will require those in practice to give up their occupation. Dent v. West Virginia, 129 U. S. 114, 122, 9 S. Ct. 231, 32 L. Ed. 623; Hawker v. New York, 170 U. S. 189, 18 S. Ct. 573, 42 L. Ed. 1002. Legislation prescribing qualifications which a practitioner cannot meet because of conditions antedating the enactment of the legislation is valid. Such legislation does not constitute punishment; it is legitimate regulation. Hawker v. New York, 170 U. S. 189, 18 S. Ct. 573, 42 L. Ed. 1002; Meffert v. State Board of Medical Registration, 66 Kan. 710, 72 P. 247, 1 L. R. A. (N. S.) 811. The limitation on the above doctrines is the principle that the regulations must be reasonable and must bear some relation to the service to be rendered by the practitioner.

[7] The changes in the qualifications of drugless healers, made by the act of 1925, were within the legislative discretion. It is not unreasonable to exact a high school education or its equivalent as a proper standard of general education. Neither is it an arbitrary exercise of legislative power to require a residence course of three sessions, consisting of 36 weeks each, in a school of approved standing.

[8] The power of the state to require a license implies the power to revoke a license which has been improperly issued. Provision for the revocation of such licenses is made by the act of 1919, whose constitutionality is not under attack. The statute in question merely changes the procedure required for such purpose.

[9] The act of 1925 provides for notice and hearing to a licentiate whose license is proposed to be revoked. He is entitled to the compulsory attendance of witnesses and to be represented by counsel. If the issue is determined against him, he has a right to review the action of the director of licenses in the superior court for Thurston county. This procedure abundantly meets the "due process" requirements of the Fourteenth Amendment. Reetz v. Michigan, 188 U. S. 505, 507, 23 S. Ct. 390, 47 L. Ed. 563.

[10, 11] The equal protection of the laws, guaranteed by the above amendment, is secured "if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government." Duncan v. Missouri, 152 U. S. 377, 382, 14 S. Ct. 570, 572 (38 L. Ed. 485). The statute in question operates alike on all who come within its purview. The presumption is that in its enforcement the director of licenses will act fairly and from a good motive. Douglas v. Noble, 261 U. S. 165, 170, 43 S. Ct. 303, 67 L. Ed. 590; Lehmann v. Board of Accountancy, 263 U. S. 394, 44 S. Ct. 128, 68 L. Ed. 354. The statute does not deny to plaintiffs the equal protection of the laws.

[12] "A bill of attainder is a legislative act which inflicts punishment without a judicial trial." Cummings v. Missouri, 4 Wall. 277, 323, 18 L. Ed. 356. The statute in question inflicts no punishment. Meffert v. State Board of Medical Registration, 66 Kan. 710, 72 P. 247, 251, 1 L. R. A. (N. S.) 811; Hawker v. New York, 170 U. S. 189, 18 S. Ct. 573, 42 L. Ed. 1002. If plaintiffs lose the right to continue the practice of their profession, it will not be as a punishment for some offense committed by them, but because their qualifications do not measure up to the legislative requirements.

[13, 14] In Calder v. Bull, 3 Dall. (Pa.) 386, 390, 1 L. Ed. 648, the court classifies ex post facto laws as follows:

"(1) Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action.

"(2) Every law that aggravates a crime, or makes it greater than it was when committed.

"(3) Every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime, when committed.

"(4) Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time

of the commission of the offense, in order to convict the offender."

This definition has been repeatedly approved in form or substance. Hopt v. Utah, 110 U. S. 574, 589, 4 S. Ct. 202, 28 L. Ed. 262; Mallett v. North Carolina, 181 U. S. 589, 593, 21 S. Ct. 730, 45 L. Ed. 1015; Kentucky Union Co. v. Kentucky, 219 U. S. 140, 31 S. Ct. 171, 55 L. Ed. 137. It is manifest that the statute in question does not fall within the above classification. It has been expressly held that a statute which makes provision for the cancellation of licenses of those engaged in the practice of medicine is not obnoxious to the ex post facto provision of the federal Constitution. Reetz v. Michigan, 188 U. S. 505, 510, 23 S. Ct. 390, 47 L. Ed. 563.

If plaintiffs are prosecuted criminally because of conditions brought about by the statute in question, it will be because they practice their profession after their licenses are revoked. Such prosecution would be based on acts subsequent to the passage of the statute. On this branch of their contention plaintiffs rely on Cummings v. Missouri, 4 Wall. 277, 18 L. Ed. 356, and Ex parte Garland, 4 Wall. 333, 18 L. Ed. 366. The Supreme Court has held that the doctrine of these cases is inapplicable to a proceeding brought for the revocation of a physician's license for lack of qualifications, because of conditions antedating the statute prescribing the qualifications. Hawker v. New York, 170 U. S. 189, 198, 18 S. Ct. 573, 42 L. Ed. 1002. We therefore conclude that chapter 10 of the Session Laws of Washington for 1925 is not invalid because of any of the provisions of the federal Constitution invoked in the bill.

[15] A constitutional statute may be enforced so arbitrarily as to violate the right of a party to pursue his occupation, but the presumption is that boards and officers will be actuated by good motives and will act fairly. New York ex rel. Lieberman v. Van De Carr, 199 U. S. 552, 563, 26 S. Ct. 144, 50 L. Ed. 305. The bill contains no allegations to rebut this presumption. It is alleged that the director of licenses will revoke the limited license of the plaintiff Wehe; if he does so, she will have a plain remedy under section 5 of the statute. The act complained of, as construed by the Supreme Court of Washington, entitles her to retain her limited license. State ex rel. v. Maybury, 236 P. 566.

[16] Chapter 10 of the Session Laws of 1925 is also attacked as violative of various provisions of the Constitution of Washington. The federal courts are reluctant to declare a statute void because of conflict with a state Constitution, when the state court of last resort has not passed upon the question. Michigan Co. v. Powers, 201 U. S. 245, 291, 26 S. Ct. 459, 50 L. Ed. 744; Joseph R. Foard Co. v. Maryland, 219 F. 827, 835, 135 C. C. A. 497; Cook v. Burnquist (D. C.) 242 F. 321, 328. In this case the statute in question has come before the Supreme Court of Washington for construction. State ex rel. Fryberg v. Maybury, 236 P. 566. We may say in this case, as was said by the Supreme Court in Michigan Co. v. Powers, 201 U. S. 245, 292, 26 S. Ct. 459, 462 (50 L. Ed. 744):

"While this case did not directly determine the constitutionality of the statute, a fair implication is that it was not regarded as obviously in conflict with the state Constitution, for in that event the court would scarcely have taken time to consider the validity of proceedings under its authority."

In that case, and in Pullman Co. v. Knott, 235 U. S. 23, 35 S. Ct. 2, 59 L. Ed. 105, the Supreme Court declined to pass on the conformity of the statute in question to the state Constitution. On the authority of these cases we decline to pass on this branch of plaintiffs' contention. The decision of the Supreme Court of Washington on that subject would be binding on this court, and in view of the delicacy of the question under the circumstances of this case it is better that this question be determined by the state courts.

The application for an injunction is denied. The motion to dismiss is allowed.