Warren James MOITY, Sr.,

v.

LOUISIANA STATE BAR
ASSOCIATION et al.

Civ. A. No. 75–2193.

United States District Court,
E. D. Louisiana.

March 3, 1976.

Warren James Moity, Sr., pro se.

Carl J. Barbier, William P. Curry, Jr., Asst. Atty. Gen., New Orleans, La., for defendants.

Before AINSWORTH, Circuit Judge, and BOYLE and RUBIN, District Judges.

MEMORANDUM OPINION AND ORDER

BOYLE, District Judge:

Plaintiff in this proceeding, Warren James Moity, Sr., has applied for admission to the Bar of Louisiana for a second time. He withdrew an earlier application in 1960, during the course of a hearing to determine whether he possessed "good moral character," one of the prerequisites of admission. At that time, he claims to have completed three years of legal study under the supervision of a licensed Louisiana attorney. Such supervisory study satisfied the educational prerequisite of admission until the admission standards were amended in 1959. The new requirement, which Moity cannot satisfy, is that an applicant produce evidence of graduation from a law school approved by the American Bar Association. Plaintiff does not dispute the representation of the defendant Bar Association that, with the abolition of the old rule in 1959, persons who had relied upon it and commenced the study of law under a Louisiana attorney would be allowed to sit for the Bar examination until June of 1965, which, of course, Moity did not do.

In April of 1975, Moity wrote to the Committee on Bar Admissions of the Louisiana State Bar Association, requesting an application form for the taking of the State Bar exam to be held in July. He did not complete the form forwarded to him, however, but on May 7, 1975 petitioned the Louisiana Supreme Court for a writ of mandamus ordering that he be allowed to take the exam. On June 13, 1975, the Court refused the application for the writ, stating that plaintiff had failed to comply with the admission requirements set forth in the Bar Association's Articles of Incorporation.[1]

Asserting jurisdiction under 42 U.S.C. § 1983, Moity now sues the Louisiana Supreme Court and its individual Justices as well as the Louisiana Bar Association. In his original complaint, he seeks injunctive and declaratory relief in addition to monetary damages of $1 million. The constitutional claims urged are 1) that his right of privacy was violated by a forced waiver of the confidentiality of certain information, which waiver is effected by signing a letter sent out with the application form by the defendant Bar Association's Committee on Admission; 2) that his Fourteenth Amendment guarantees of due process and equal protection were denied by the refusal to allow his sitting for the Bar examination; and 3) that the imposition of the formal, legal education requirement to reject his application amounts to the state's passage of an *ex post facto* law or a law impairing the obligation of contracts, in violation of Article 1, section 10 of the Constitution. By an amended and supplemental complaint, plaintiff adds certain charges of unethical conduct by the Supreme Court Justices in their disposition of his mandamus petition. He further seeks to enjoin the enforcement of the Louisiana statute which sets forth the Bar Association's Articles of Incorporation,[2] on the grounds that the admissions standards contained therein are unconstitutional. Accordingly, this Court was convened.

The defendant Court and Justices as well as the defendant Bar Association have moved to dismiss the action for the failure to state a claim and/or the lack of jurisdiction. However, by our decision today we obviate the need to dispose of these motions; for we find that, on the basis of the substantiality doctrine, this Court need not have been convened under 28 U.S.C. § 2281.

Were Moity solely challenging the *per se* validity of the graduation requirement—as opposed to the reasonableness of enforcing that requirement to deny his taking of the Bar exam—it would be a simple matter to

---

1. *Moity v. Louisiana State Bar Association,* La., 313 So.2d 824 (1975). In an apparent clerical error, the Court cited the pertinent section of the articles as "Article IV, Section 7(B)," instead of Article XIV, Section 7(B).

Moity appealed from the ruling to the United States Supreme Court, which denied review of the State Supreme Court's decision. *Moity v. Louisiana State Bar Association,* 423 U.S. 895, 96 S.Ct. 194, 46 L.Ed.2d 127 (1975).

2. LSA–R.S. 37, ch. 4 App.

conclude that the constitutional challenge he brings is frivolous and insubstantial. Supreme Court jurisprudence establishes that

[a] State can require high standards of qualification . . . before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law. [Citations omitted].[3]

It would seem incontrovertible that the requirement of a formal legal education is rationally related one's proficiency in the law, and, hence, to one's fitness to practice.

■ Still, it requires little more to dispense with the claim that the state's educational prerequisite, as applied, violated this plaintiff's Fourteenth Amendment rights. The legitimate authority of the state to impose reasonable admissions requirements surely encompasses the prerogative to make reasonable amendments to such requirements, as these become warranted by the changing conditions of the profession.[4] Just so, that section of the statute which contains the requisites of admission to the Louisiana Bar provides that

[e]very applicant . . . must meet the following requirements *until such time as they may be changed by the Board of Governors of this [Bar] Association with the approval of the Supreme Court* . . . .[5]

■ That the particular change in question was effected reasonably *vis-a-vis* plaintiff is clear from the record. Moity had finished three years of supervised legal

study when the new rule was enacted in 1959 which required a formal legal education. Thus, he was within the class of persons who would be qualified to sit for the Bar examination until 1965, the new rule notwithstanding. It must be presumed *that he knew of this when he withdrew his* application in 1960. Yet, not until 1975— ten years after the deadline passed—did he choose to renew his application and attempt to invoke the former rule regarding supervised study. We do not regard the six-year "grace period" (1959–1965) as arbitrary or unduly restrictive on its face. Nor does plaintiff show good cause for his delay in coming forward, aside from the suggestion that he was in the process of establishing his good moral character during the years following the withdrawal of his original petition for admission.[6]

■ Moity also contends that the denial of his application on the basis of the educational requirement amounts to passage of an *ex post facto* law. However, the constitutional prohibition against such laws relates only to penal or criminal, rather than civil, matters.[7] Furthermore, in a somewhat analogous context, it has been expressly determined that a regulatory statute purporting to disallow the continued practice of medicine by a previously licensed physician is not "punishment" for a past offense and, hence, not violative of the *ex post facto* clause.[8]

■ Plaintiff's complaint speaks in terms of a "contract" with defendants in connection with his original application, suggest-

---

3. *Schware v. Board of Bar Exam. of State of N. M.*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796, 801 (1957).

4. This reasoning has been adopted in cases dealing with the state's regulation of medical practice. *See Dent v. State of West Virginia*, 129 U.S. 114, 123, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889); *Butcher v. Maybury*, 8 F.2d 155, 159 (W.D.Wash.1925).

5. LSA–R.S. 37, ch. 4 App., Art. 14, § 7 (emphasis added).

6. *See* Original Complaint, ¶ 17 [Record Doc. # 1].

7. *See e. g., Harisiades v. Shaughnessy*, 342 U.S. 580, 594–5, 72 S.Ct. 512, 521–2, 96 L.Ed. 586 (1952); *Carpenter v. Commonwealth of Pennsylvania*, 58 U.S. (17 How.) 456, 462–3, 15 L.Ed. 127 (1854); *Watson v. Mercer*, 33 U.S. (8 Pet.) 88, 109–10, 8 L.Ed. 876 (1834); *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) (ex post facto law defined).

8. *See Reetz v. Michigan*, 188 U.S. 505, 23 S.Ct. 390, 47 L.Ed. 563 (1903); *Butcher v. Maybury*, supra.

ing that the real basis of his Article I, section 10 claim is the provision therein that a state may not pass laws "impairing the Obligation of Contracts. . . ." This theory is equally specious. To begin with, it is only by a rather strained analysis that the relationship between Moity as applicant and the defendants could be viewed as contractual in a legally binding sense. But even assuming the existence of a valid contract capable of being impaired by the state, it is well settled that any such agreements necessarily are subject to the state's legitimate, regulatory authority.[9] As has already been observed, the state's promulgation of a new educational requirement, both as to Bar applicants in general and Moity in particular, was a reasonable exercise of that authority.

There but remains plaintiff's argument that a letter accompanying the application form furnished by the Bar Association's Committee on Admissions constitutes an unwarranted invasion of the applicant's right of privacy.[10] The letter authorizes the Committee's access to employment, military, governmental, educational, legal and medical sources, for the gathering of "any and all information . . . concerning [the applicant's] character and past record. . . ."[11]

 We are cognizant of the State Bar's

legitimate interest in determining whether [an applicant] has the qualities of character and the professional competence requisite to the practice of law.[12]

Admittedly, the constitutionally permissible scope of state inquiry in making that determination must be limited by the courts' traditionally high regard for the First Amendment freedoms of speech and association.[13] But plaintiff here does not demonstrate so broad a sweep of investigation as would compromise the expression of his personal beliefs. Nor does he show that the revelation of the information contemplated by the Committee letter is inconsistent with the state's responsibility for screening admissions to its Bar. Even as it recognized the constitutional basis for the right of privacy, the Supreme Court insisted that the right is not unqualified and "must be considered against important state interests in regulation."[14] We cannot accept the argument that an individual applicant's privacy interest outweighs the State Bar's interest in gaining information about his background, specifically when that information is limited, as it is here, to the relevant areas of an individual's character and his past employment, military, governmental, educational, legal and medical record.

The foregoing compels our conclusion that the constitutional questions raised by plaintiff's statutory challenge are "essentially fictitious," "wholly insubstantial," "obviously frivolous" and "obviously without merit."[15] Indeed, placing his challenge in jurisprudential context, it would appear that prior decisions[16] have rendered plaintiff's claim that the state statute is unconstitutional so unsound

as to foreclose the subject and leave no room for the inference that the questions

---

9. *See Semler v. Oregon State Bd. of Dental Ex'ers,* 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086 (1935).

10. For present purposes we regard this claim as part of plaintiff's challenge to the enforcement of that section of the statute authorizing the Committee on Bar Admissions "to inquire into the general qualifications of all applicants . . . ." LSA–R.S. 37, ch. 4 App., Art. 14, § 2.

11. *See* Letter from Committee on Bar Admissions to Applicants, attached to Original Complaint [Record Doc. # 1].

12. *Baird v. State Bar of Arizona,* 401 U.S. 1, 7, 91 S.Ct. 702, 706, 27 L.Ed.2d 639, 647 (1971).

13. *See id.; Law Students Civ. Rts. Res. Coun., Inc. v. Wadmond,* 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971).

14. *Roe v. Wade,* 410 U.S. 113, 154, 93 S.Ct. 705, 727, 35 L.Ed.2d 147, 177 (1973).

15. *See Goosby v. Osser,* 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); *Driskell v. Edwards,* 518 F.2d 890 (5 Cir. 1975).

16. *See* notes 3–4, 7–9 and 12–14 and accompanying text.

sought to be raised can be the subject of controversy.[17]

Accordingly, we find that the requisite basis does not exist to support the jurisdiction of a three-judge court, and we return this action to the originating district court judge for disposition as he deems appropriate.

---

**17.** *Goosby v. Osser*, supra, 409 U.S. at 518, 93 S.Ct. at 859, 35 L.Ed.2d at 42 [citing *Ex parte* *Poresky*, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933)].