# CRANE v. JOHNSON, GOVERNOR OF THE STATE OF CALIFORNIA, ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF CALIFORNIA.

No. 493.   Argued December. 12, 1916.—Decided January 8, 1917.

The distinction made in the law of. California (Laws 1913, c. 354; as amended by Laws 1915, c. 105), passed for the regulation of the practice of medicine and other modes of healing, between treatment employing prayer and religious faith only and a species of treatment which, while reliant upon the creation of mental states and processes in the patient, involves for its proper application special skill and experience and ability to diagnose diseases—is not necessarily an arbitrary distinction denying equal protection of the laws under the Fourteenth Amendment.

When a party assails a state law upon the ground that it violates his rights under the Fourteenth Amendment, the law will be considered only in its application to his situation as revealed in the record, and all uncertainties of fact will be resolved against the complainant and in favor of the law.

233 Fed. Rep. 334, affirmed.

THE case is stated in the opinion.

*Mr. Tom L. Johnston* for appellant.

*Mr. Robert M. Clarke* and *Mr. Thomas Lee Woolwine,* with whom *Mr. U. S. Webb,* Attorney General of the State of California, and *Mr. George E. Cryer* were on the briefs, for appellees.

MR. JUSTICE McKENNA delivered the opinion of the court.

Appeal from an order denying an interlocutory injunction, three judges sitting. The court took jurisdiction of

the action, citing *Raich* v. *Truax*, 219 Fed. Rep. 273, 283; *Truax* v. *Raich*, 239 U. S. 33; but denied the injunction on the ground that the averments of the complaint did not justify it.

Complainant is a drugless practitioner, he avers (we state the facts averred narratively), and has practiced his profession in the City and County of Los Angeles for the last seven years and is dependent upon it for making a living. He does not employ either medicine, drugs or surgery in his practice, nor is there anything harmful in it to the individual or dangerous to society; but he does employ in practice faith, hope, and the processes of mental suggestion and mental adaptation.

Under a statute of the State that went into effect August 10, 1913, amended in 1915, a board of medical examiners was created which was empowered to prescribe a course of study and examination for those practicing medicine (using this word in a broad sense for convenience) and to issue certificates of qualifications and licenses.

Three forms of certificates were required to be issued, first, a certificate authorizing the holder thereof to use drugs, or what are known as medicinal preparations, in or upon human beings and to perform surgical operations, which certificate shall be designated "physician and surgeon certificate." Second, a certificate authorizing an opposite treatment to that which the first certificate authorized (we are using general descriptions), which certificate shall be designated "drugless practitioner certificate." Third, a certificate authorizing the holder to practice chiropody. And the statute also provides for the issuance of what it designates as a "reciprocity certificate." Any of these certificates, on being recorded in the office of the county clerk, as provided in the act, shall constitute the holder thereof a duly licensed practitioner in accordance with the provisions of his certificate.

Applicants must file with the board testimonials of good

moral character and diplomas of a school or schools and, in addition, each applicant for a "physician and surgeon certificate" must show that he has attended four courses of study, each to have been not less than 32 weeks' duration, with some other additions; and each applicant for a "drugless practitioner certificate" must show that he has attended two courses of study, each of such courses to have been of not less than 32 weeks' duration, but not necessarily pursued continuously or consecutively, and at least ten months shall have intervened between the beginning of any course and the beginning of the preceding course; and the course in chiropody is to be of not less than 39 weeks' duration consisting of not less than 664 hours. There is a provision that, in lieu of a diploma or diplomas and preliminary requirements in the other courses, if the applicant can show to the board that he has taken the courses required by the statute in a school or schools approved by the board totaling not less than 64 weeks' study of not less than 2,000 hours for a "drugless practitioner certificate" or 128 weeks' study of not less than 4,000 hours for a "physician and surgeon certificate," he shall be admitted to examination for his form of certificate.

The statute sets out the course of instruction which the respective applicants must have pursued, giving the course that is necessary for a "physician and surgeon certificate" and the course for a "drugless practitioner certificate." The descriptions are very elaborate and technical. The statute also prescribes the manner of examination, states the exemptions from its provisions, the penalties for its violation, and for what conduct and upon what conditions the certificates may be revoked. Among the latter is the following:

"Ninth. The use, by the holder of a 'drugless practitioner certificate,' of drugs or what are known as medicinal preparations, in or upon any human being, or the

severing or penetrating by the holder of said 'drugless practitioner certificate' of the tissues of any human being in the treatment of any disease, injury, deformity, or other physical or mental condition of such human being, excepting the severing of the umbilical cord."

By § 22 of the original act (unaffected by the Act of 1915) it is provided: "Nor shall this act be construed so as to discriminate against any particular school of medicine or surgery, or any other treatment, nor to regulate, prohibit or apply to, any kind of treatment by prayer, nor to interfere in any way with the practice of religion."

It is alleged that the statute violates the Fourteenth Amendment of the Constitution of the United States, especially the equal protection clause thereof, in that it imposes greater burdens upon complainant than upon others in the same calling and position. That it discriminates in favor of the Christian Science drugless practitioner, distinguishes between the treatment of the sick by prayer, the treatment of the sick by faith, mental suggestion and mental adaptation, and treatment by laying on of hands, annointing with Holy oil or other kindred treatment.

Complainant does not employ prayer in the treatment of disease and is, therefore, not exempt from examination by the medical board, and is subject, therefore, to the penalties of the act if he practices his profession for which he has fitted himself by study and practice, and upon which he is dependent and by reason of his age he is in large measure unable to take up any new branch of work. That defendants, appellees here, are threatening prosecutions under the act and he is without remedy at law.

There is an allegation that the Supreme Court of the State of California has decided that the statute is not offensive to the Fourteenth Amendment, in *habeas corpus* proceedings prosecuted by one Chow Juyan, who was

convicted of practicing some form of Chinese healing which was adjudged a violation of the act.

The allegations of the bill set forth complainant's particular grievance to be that the statute discriminates between forms of healing the sick by the use of prayer and other drugless methods, and invoke the equal protection clause of the Fourteenth Amendment of the Constitution of the United States. In other words, he attacks the classification of the statute as having no relation to the purpose of the legislation. Of course, complainant is confined to the special discrimination against him; he cannot get assistance from the discrimination, if any exist, against other drugless practitioners. The case, therefore, is brought to the short point of the distinction made between his practice and certain forms of practice, or, more specifically, between his practice of drugless healing and the use of prayer.

The principle of decision needs no exposition and the only question is whether it was competent for the State to recognize a distinction in its legislation between drugless healing as practiced by complainant and such healing by prayer. That there is a distinction between his practice and that of prayer, complainant himself, it seems to us, has charged in his bill. He has not only charged that he does not employ either medicine, drugs or surgery in his practice but that he does employ faith, hope and the processes of mental suggestion and mental adaptation. These processes he does not describe. Presumably they are different from healing by prayer, different from the treatment by Christian Science. But he alleges that for his practice he has become "particularly fitted, . . . by many years of study and practice therein." In other words, the treatment is one in which skill is to be exercised and the skill can be enhanced by practice, and the objects of the treatment are diseased human beings whose condition is to be diagnosed. To treat a disease there

mus⁺ be an appreciation of it, a distinction between it and other diseases, and special knowledge is therefore required. And this was the determination of the State; but it determined otherwise as to prayer, the use of which, it decided, was a practice of religion. We cannot say that the State's estimate of the practices and of their differences is arbitrary and therefore beyond the power of government. And this we should have to say to sustain the contentions of complainant, and say besides, possibly against the judgment of the State, that there was not greater opportunity for deception in complainant's practice than in other forms of drugless healing.

Because of our very recent opinions we omit extended reply to the argument of counsel and the cases cited by him, not only of the general scope of the police power of the State but also of the distinctions which may be made in classifying the objects of legislation. And for like reason we do not review or comment upon the cases cited in opposition to complainant's contentions.

It is to be observed that the order of the court was put upon the narrow ground of the averments of the complaint, no opinion beyond such averments being expressed.

*Decree affirmed.*