Donald J. BUCKINGHAM and Myrtle E. Buckingham for themselves and all other persons similarly situated, Plaintiffs,

v.

Howard H. LORD, John C. Alley and J. Morley Cooper, individually and as members of the State Board of Equalization of the State of Montana, Defendants.

Civ. No. 1947.

United States District Court,
D. Montana,
Missoula Division.
April 19, 1971.

Fennessy, Crocker & Arness and Marshall G. Candee of Libby, Mont., for plaintiffs.

Edward Jene Bell, Tax Counsel, State Board of Equalization, Helena, Mont., for defendants.

## ORDER AND MEMORANDUM OPINION

JAMESON, District Judge.

The named plaintiffs, in a class action in three counts "for themselves and all other persons similarly situated", allege discrimination by the defendants, who are members of the State Board of Equalization of the State of Montana, through unequal assessments and taxation of the plaintiffs' property as compared with others of the same class.

Count one alleges a conspiracy to deprive "the plaintiffs of the equal protection of the laws and of equal privileges and immunities under the laws", in violation of 42 U.S.C. § 1985(3),[1] with jurisdiction conferred by 28 U.S.C. § 1343(1).[2] Count two alleges that plaintiffs have been deprived of "their property without due process of law and denied the equal protection of the laws and their property has been taken and is being taken for public use without just

---

1. 42 U.S.C. § 1985(3) provides: "If two or more persons in any State * * * conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

2. 28 U.S.C. § 1343 provides:
"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
"(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42; * * * *"

compensation", in violation of 42 U.S.C. § 1983,[3] with jurisdiction conferred by 28 U.S.C. § 1343(3).[4] Counts one and two seek damages in the amount of $58,-800,000. Count three seeks declaratory and injunctive relief against continued deprivation, pursuant to 28 U.S.C. § 2201,[5] with jurisdiction conferred by 28 U.S.C. § 1331.[6]

Defendants have moved to dismiss on the ground, inter alia, that this court "lacks jurisdiction over the subject matter of this action, which is a property or monetary right arising under the property tax laws of the state of Montana."

### Three-judge Court

◼ Preliminary to a consideration of the motion to dismiss, it is necessary to dispose of plaintiffs' contention, asserted at oral argument, that a three-judge court should be convened pursuant to 28 U.S.C. §§ 2281 and 2284.[7] Section 2281 requires a three-judge court for every case seeking to enjoin the enforcement of a state statute "upon the ground of the unconstitutionality of such statute * * *." It is well established, however, that until "the complainant in the district court attacks the constitutionality of the statute, the case does not require the convening of a three-judge court * * *." Ex parte Bransford, 1940, 310 U.S. 354, 361, 60 S.Ct. 947, 951, 84 L.Ed. 1249.[8]

◼ Where a plaintiff "is seeking to draw into issue the constitutionality not of a statute, but of a departmental policy or regulation", or where the "issue is one of actual discrimination, rather than the constitutionality of a State law", the issue "may not properly be addressed to a three-judge court * * *." Nichols v. McGee, N.D.Cal.1959, 169 F.Supp. 721, 724, app. dismissed, 361 U.S. 6, 80 S.Ct. 90, 4 L.Ed.2d 52, and cases there cited.

◼ The complaint here does not allege, nor do plaintiffs contend, that any state statute is unconstitutional. The letter addressed to the court recites that the action "draws in question the uncon-

---

3. 42 U.S.C. § 1983 provides:
   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

4. 28 U.S.C. § 1343(3) gives a federal court jurisdiction of civil actions:
   "To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;"

5. 28 U.S.C. § 2201 provides:
   "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

6. 28 U.S.C. § 1331 gives the district courts "original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interests and costs, and arises under the Constitution, laws, or treaties of the United States."

7. No formal request for a three-judge court is contained in any of the pleadings or pre-hearing briefs. Plaintiffs did, however, write a letter to the court dated November 10, 1970 advising the court of the nature of the action and stating that a copy of the complaint was submitted in compliance with Rule 21 of the local rules of court. This rule relates to statutory three-judge courts.

8. See also Phillips v. United States, 1941, 312 U.S. 246, 252, 61 S.Ct. 480, 85 L.Ed. 800; Eason v. Dickson, 9 Cir. 1968, 390 F.2d 585, 588, cert. denied, 1970, 392 U.S. 914, 88 S.Ct. 2076, 20 L.Ed.2d 1373; Bussie v. Long, 5 Cir. 1967, 383 F.2d 766; Krauss v. Sacramento Inn, E.D.Cal.1970, 314 F.Supp. 171.

stitutionality of assessment procedures prescribed by the state board of equalization * * * as repugnant to the Constitution of the United States * * * ", and expressly states, "Constitutionality of the statutes themselves is not challenged." This is not a proper case for a three-judge court.

### Allegations of Complaint

Plaintiffs have brought this action for themselves and "all other persons similarly situated", which are "about 100,-000 in number" located in all parts of Montana and elsewhere, who are "owners of and taxpayers upon town or city lots or improvements in the state of Montana." In support of their conspiracy charge (count one) and actual deprivation of constitutional rights (count two) they allege that the State of Montana "has specified the classes into which property is to be divided, and placed all land and town and city lots, with improvements, in a numbered Class Four for the purposes of taxation"; [9] that the defendants "under color of statute, regulation, custom or usage of the state, caused and required all assessments of the Class Four property * * * to be made, in the case of town and city lots and improvements at 40 per cent of full cash value, and in the case of other land, a substantial portion of which is owned and used by corporations, at spe-cial, preferential and discriminatorily lower values derived according to formulas prescribed by the defendants, including such factors as capitalization, productivity, retention, risk, income and profit." [10]

It is the plaintiffs' theory that "to the extent of the inequality in such proportions have relieved and discharged the property thus favored and the persons owning the same from their proportionate share of taxes, relinquished and suspended the power to tax corporations and corporate property and exacted from the plaintiffs the amount necessary to meet the resulting deficiency in the public revenues," they have been damaged in the sum of $58,800,000, which represents the amount of their property which has been taken without due process of law or just compensation.

### Does this Court have Jurisdiction under 28 U.S.C. § 1343?

Counsel for plaintiffs have cited no case in which the civil rights jurisdictional statute, § 1343, has been applied to a case involving alleged discrimination in the assessment and collection of property taxes. As a general rule this statute has been treated as "applicable to personal liberty rather than a property or monetary claim." Gray v. Morgan, 7 Cir. 1966, 371 F.2d 172, 175,

---

9. R.C.M.1947, § 84–301 provides in part: "For the purpose of taxation the taxable property in the state shall be classified as follows:

"* * * *

"Class Four. All land, town and city lots, with improvements, and all trailers affixed to land owned, leased, or under contract of purchase by the trailer owner, manufacturing and mining machinery, fixtures and supplies, except as otherwise provided by the constitution of Montana, and except as such property may be included in Class Five or Class Seven."

R.C.M.1947, § 84–302 provides that as "a basis for the imposition of taxes upon the different classes of property specified in the preceding section, a percentage of the true and full value of the property of each class shall be taken as follows: * * * Class 4. Thirty per cent (30%) of its true and full value."

10. The complaint alleges further that "as nearly as the plaintiffs are able to learn, the following percentages of full cash value—

| | |
|---|---|
| Grazing and agricultural land | 18 |
| Standing timber | 25 |
| Timber land less than | 5 |
| Railroads and other utilities (assessed directly by defendants) | 28 |

—and have thereby caused to be levied and collected non-uniform taxes upon property in the same class, in the following proportions by percentage of full cash value—

| | |
|---|---|
| Town and city lots and improvements | 12 |
| Grazing and agricultural land | 5½ |
| Standing timber | 8 |
| Timber land | 1 |
| Railroads and other utilities | 9" |

cert. denied, 1967, 386 U.S. 1033, 87 S. Ct. 1484, 18 L.Ed.2d 596.

In a concurring opinion in Hague v. Committee for Industrial Organization, 1939, 307 U.S. 496, 59 S.Ct. 954, 83 L. Ed. 1423, Mr. Justice Stone (joined on this point by Mr. Justice Reed and Chief Justice Hughes) considered the two jurisdictional statutes here involved, §§ 1331 and 1343. He said in part: "By treating § [1343] as conferring federal jurisdiction of suits brought under the Act of 1871 in which the right asserted is inherently incapable of pecuniary valuation, we harmonize the two parallel provisions of the Judicial Code, construe neither as superfluous, and give to each a scope in conformity with its history and manifest purpose." 307 U.S. at 530, 59 S.Ct. at 971. After distinguishing Holt v. Indiana Mfg. Co., 1900, 176 U.S. 68, 72, 20 S.Ct. 272, 44 L.Ed. 374, a suit to restrain alleged unconstitutional taxation of patent rights, held not to involve a "civil right" under the predecessor to § 1343, and other cases involving unconstitutional infringement of a right to personal liberty,[11] Mr. Justice Stone concluded that the special jurisdictional statute applies "whenever the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights." 307 U. S. at 531, 59 S.Ct. at 971.

Numerous cases have followed Mr. Justice Stone's concurring opinion, including Bussie v. Long, supra, a class action against members of the Louisiana Tax Commission by Louisiana taxpayers alleging failure to comply with their Louisiana constitutional and statutory duty to establish actual cash value of all property for purpose of ad valorem tax assessments. After referring to the conclusion in the concurring opinion in Hague that the court did not have civil rights jurisdiction, the court suggested that the Supreme Court "had an opportunity to reject or affirm this view in Abernathy v. Carpenter, W.D.Mo., 1962, 208 F.Supp. 793. It adhered to its view by affirming. 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963)." 383 F.2d at 769. The court held accordingly that the district court had correctly concluded that the case did not involve a civil rights complaint.

Relying in large part on Hague, Bussie v. Long, supra, and Gray v. Morgan, supra, a three-judge court in Hornbeak v. Hamm, M.D.Ala.1968, 283 F.Supp. 549, 551,[12] held that jurisdiction was lacking under § 1343 in an action by Alabama taxpayers against the revenue commissioner seeking "an injunction against the defendant, and his successors in office, 'from continuing, under color of statute, * * *, [to deprive] plaintiff and all other citizens and taxpayers similarly situated, of property without due process of law * * *.'" On appeal the Supreme Court affirmed the judgment without argument.[13] 393 U.S. 9, 89 S. Ct. 47, 21 L.Ed.2d 14.

The validity and effect of Justice Stone's construction of §§ 1343 and 1331 were considered most recently in Eisen v. Eastman, 2 Cir. 1969, 421 F.2d 560, cert. denied 1970, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75. In a scholarly and exhaustive opinion [14] Judge Friendly points out that there "has been no thorough discussion by the Supreme Court of the scope of 28 U.S.C. § 1343(3) since Hague

---

11. Truax v. Raich, 1915, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131; Crane v. Johnson, 1917, 242 U.S. 339, 37 S.Ct. 176, 61 L.Ed. 348.

12. The plaintiff in Hornbeak v. Hamm attacked the constitutionality of an Alabama statute. Hence in that case a three-judge court was proper.

13. Three of the justices were of the opinion that probable cause should be noted and the case set for argument.

14. As Judge Friendly suggested, "federal courts are now being asked to determine a great variety of controversies between city or state officials and citizens who prefer litigating in the federal courts to pursuing their state remedies", pointing out the substantial increase in civil rights cases since 1967, and saying further: "The existing and prospective importance of the problems thus presented has prompted us to examine them at greater length than disposition of this case might demand." 421 F.2d at 561–562.

v. C.I.O.," and that, "Apart from its age, *Hague* casts an uncertain light because of the absence of a majority opinion." 421 F.2d at 563. The court held, "although with a good deal less than complete assurance, that Justice Stone's *Hague* formulation, generously construed, should continue to be regarded as the law of this circuit", and since the complaint "alleged only the loss of money, the district court's conclusion that jurisdiction under the Civil Rights Act was not established * * * was thus correct." Id. 421 F.2d at 566.

Eisen v. Eastman was an action by a landlord against a city district rent and rehabilitation director challenging the constitutionality of a city rent control law and the propriety of action by the director in reducing maximum rents chargeable. In considering various types of cases involving personal and property rights, Judge Friendly made this pertinent comment:

> "Like so many definitions, Justice Stone's has been considerably easier to state than to apply. Attacks on the constitutionality of state tax statutes rather plainly fall beyond it, and one of its virtues is in excluding them." Id. at 564.

Stating that "there seems to be something essentially right" about Mr. Justice Stone's construction, Judge Friendly continues:

> " * * * It has the merit of preserving not only the kind of case that was at the core of congressional concern in 1871 but a good many others that Congress would probably desire to have within the statute, while at the same time excluding cases that neither the Reconstruction Congress nor later Congresses could really have had in mind. It is quite hard to be-

lieve, for example, that the framers either of § 1 of the Civil Rights Act of 1871 or of its successors would have thought the statute could be invoked by a person complaining of state taxes allegedly barred by the Commerce Clause. * * *" Id. at 565–566.

In the recent case of Roberge v. Philbrook, D.Vt.1970, 313 F.Supp. 608, 611–612, after discussing the construction of § 1343 in Mr. Justice Stone's concurring opinion in *Hague* and other cases supra, the court summarized the applicable rule:

> "Stating the test as formulated in *Hague* and as adopted by these courts is far easier than applying it to the present facts. The distinction is manageable in the abstract. When the plaintiff seeks redress for property which has been or will be taken; or when the plaintiff alleges that his personal rights have been infringed because of some violation of a purely proprietary right, only section 1331 can support jurisdiction. However, if the plaintiffs' rights to life and liberty are interfered with by the government, section 1343(3) applies and the amount in controversy need not be alleged. The distinction is tied to the recognition that it is unfair to require the plaintiff to pay for his jurisdiction when fundamental personal rights, which defy monetary valuation, are involved.

> "Unfortunately, many valuable constitutional rights do not lend themselves to classification within the lines of Justice Stone's distinction. A practical application of the test stated above is difficult when both rights of property and rights of personal liberty are involved. It falls upon the district judge to find the proper characterization for each claim by analyzing the gist of the complaint." [15]

---

15. See Judge Friendly's analysis of cases ranging from attacks on state tax statutes and actions "addressed solely to the taking of property" at one end of the spectrum to cases clearly involving alleged infringement of personal liberty at the other end of the spectrum, with cases involving denials or revocations of li- censes or discharges from public employment", which "can be viewed about equally well as complaining of a deprivation of the personal liberty to pursue a calling of one's choice or of the profits or emoluments deriving therefrom." Eisen v. Eastman, supra, 421 F.2d at 564–565.

Urging the rejection of Mr. Justice Stone's construction of § 1343 and cases which have followed it,[16] plaintiffs cite numerous cases which they contend manifest a trend to reject the property-personal rights distinction in civil rights cases.[17] It is true that some cases and law review articles have questioned this distinction, but plaintiffs have not cited, nor has the court found, any decision which rejected the distinction and found jurisdiction in a case of this nature. Rather the courts have recognized the *Hague* formula but found jurisdiction by distinguishing the factual situations. Two principal areas in which the courts have found jurisdiction when both property and personal rights were involved are seizures of property pursuant to landlord's or innkeeper's liens [18] and reduction or termination of welfare benefits without notice or provision for a hearing.[19]

Typical of the cases finding jurisdiction under § 1343 where both personal and property rights are involved is Hall v. Garson, supra, note 18, where a television had been seized under a statute giving the landlord a lien on the personal goods of the tenants and "authority to enforce that lien by a peremptory seizure of the property." After recognizing that those cases involving only "property

rights" are distinguishable, the court said in part:

"* * * But the rights that the petition seeks to protect are not the rights to the television. They are, instead, the right of the individual to be secure in his home and free from the invasion of that home without any prior procedure to protect his interest. They are then the most personal constitutional liberties of privacy and the right to be free from unreasonable searches and seizures by private persons with the blessings of this state. Plaintiffs seek the opportunity to protect those rights through the due procedures of the law. * * * These rights that this petition seeks to protect are truly the fundamentals of liberty, the essence of human dignity. * * *" 430 F.2d at 438.

There is no allegation in the instant case that plaintiffs have been deprived of the use of their property by reason of any excessive or discriminatory assessment and taxation; nor is there any allegation that the payment of those taxes impaired their ability to provide for their health and welfare. Assuming all of the allegations of the complaint to be true, the acts alleged do not constitute any actual infringement of personal liberties, and any infringement of

16. It is true, as plaintiffs argue and the courts have recognized, that there was no majority opinion in Hague. While not conclusive, it should be noted, however, that certiorari was denied in Eisen v. Eastman, supra, and the decisions in Abernathy v. Carpenter, supra, and Hornbeak v. Hamm were both affirmed by the Supreme Court.

17. Plaintiffs argue that collectively these cases "show the property right aspect of constitutional protection has given difficulty in the past chiefly by reason of isolation within the constitutional spectrum. * * * Thus, the plaintiffs are not seeking relief from discriminatory taxation as such, but relief from the impairment of their right to the ownership and enjoyment of property which is being effected by a discriminatory method of taxation."

18. See Hall v. Garson, 5 Cir. 1970, 430 F.2d 430; Santiago v. McElroy, E.D. Pa.1970, 319 F.Supp. 284; Klim v. Jones, N.D.Cal.1970, 315 F.Supp. 109.

19. See Caulder v. Durham Housing Authority, 4 Cir. 1970, 433 F.2d 998; McMillan v. Board of Education of State of New York, 2 Cir. 1970, 430 F.2d 1145; Ojeda v. Hackney, N.D.Tex.1970, 319 F.Supp. 149; Torres v. New York State Dept. of Labor, S.D.N.Y.1970, 318 F. Supp. 1313; Jackson v. Dept. of Public Welfare of State of Florida, M.D.Fla. 1970, 317 F.Supp. 1151; Alvarado v. Schmidt, W.D.Wis.1970, 317 F.Supp. 1027; McClellan v. Shapiro, D.Conn. 1970, 315 F.Supp. 484; Grubb v. Sterrett, N.D.Ind.1970, 315 F.Supp. 990; Roberge v. Philbrook, supra.

personal rights must be regarded as de minimis. Under Eisen v. Eastman and other cases cited supra, 28 U.S.C. § 1343 does not confer jurisdiction on this court, since the acts complained of affect a property right and not personal civil rights.

### Does the Court have Jurisdiction under 28 U.S.C. § 1331?

In their third count seeking declaratory and injunctive relief, plaintiffs claim jurisdiction under 28 U.S.C. § 1331, which grants jurisdiction to United States district courts in civil actions arising under the Constitution and laws of the United States where the amount exceeds $10,000. It is alleged that the named plaintiffs and other persons similarly situated, about 100,000 in number, have been damaged in the amount of $58,-800,000. There is no allegation that any single plaintiff has sustained damages in excess of $10,000. Assuming that 100,000 taxpayers had total damages of $58,800,000, the average for each would be $588.

That separate and distinct claims by various claimants may not be aggregated to provide the requisite $10,-000 jurisdictional amount is clear from the decision of the Supreme Court in Snyder v. Harris, 1969, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319. Following the 1966 amendment to Rule 23 of the Federal Rules of Civil Procedure, there was a split of authority among the circuits as to whether claims, several in character, could be aggregated to provide

the requisite jurisdictional amount in class actions. In resolving this question, the Supreme Court held that the amendment to Rule 23 did not effectuate any change in the "traditional judicial interpretation * * * that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." The Court continued: "Aggregation has been permitted only (1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." 394 U.S. at 335, 89 S.Ct. at 1056.[20]

No single plaintiff has a claim or claims exceeding $10,000.[21] Nor do plaintiffs seek to enforce "a single title or right in which they have a common and undivided interest." While they may have a common interest in obtaining tax relief, the interest of each member of the class in the ownership of his property is separate and distinct from the interest of the other members of the class. See Abernathy v. Carpenter, W.D. Mo.1962, 208 F.Supp. 793, aff'd, 1963, 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409. Since the complaint fails to allege the required jurisdictional amount, jurisdiction is lacking under § 1331.

Defendants' motion to dismiss for lack of jurisdiction of the subject matter is granted. Judgment of dismissal will be entered.

20. See also Spears v. Robinson, 8 Cir. 1970, 431 F.2d 1089; Annot. Class Actions—Jurisdictional Amount, 1970, 3 A.L.R.Fed. 372; Wright, Class Actions, 1969, 47 F.R.D. 169, 182–185; 3B Moore, Federal Practice, 2 ed. 1969, ¶ 23.95, at 23–1851–23–1857.

21. The third count of the complaint simply alleges that "the amount in controversy exceeds $10,000, exclusive of interest and costs." While the presence of the requi-

site amount is determined by the good faith allegations of the complaint, the jurisdictional amount may be challenged by a motion to dismiss. Where as here, the amount is properly challenged, the burden is on the plaintiffs to support their allegations by competent proof. Thomson v. Gaskill, 1942, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951; Euge v. Trantina, 8 Cir. 1970, 422 F.2d 1070, 1073, and cases there cited. The plaintiffs have failed to sustain that burden.