L. B. SIMS, D. C., et al., Plaintiffs,

v.

Jack W. TINNEY, D. C., et
al., Defendants.

Civ. A. No. 77–908.

United States District Court,
D. South Carolina,
Greenville Division.

Sept. 16, 1977.

Donald James Sampson, Greenville, S. C., James R. Venable, Decatur, Ga., for plaintiffs.

C. Tolbert Goolsby, Jr., Charles H. Richardson, Harry B. Burchstead, Jr., and L. Kennedy Boggs, Columbia, S. C., for Judith Ehlich, D. C., the Board and its Members.

Charles W. Wofford, Greenville, S. C., for Dr. Henry G. West, Jr., and Dr. Paul E. Parrott.

D. Kenneth Baker, Darlington, S. C., for remaining defendants.

## ORDER ON MOTION OF DEFENDANT AMERICAN CHIROPRACTIC ASSOCIATION, INC. TO DISMISS COMPLAINT

HEMPHILL, District Judge.

The complaint in this case is rambling and verbose, and in violation of Rule 8 of the Rules of Civil Procedure;[1] it revolves around a dispute as to the merits of two different philosophies towards the practice of chiropractic. Plaintiffs see themselves as "pure" practitioners, limiting themselves to what they consider the "fundamental" principles of the profession; they do not prescribe drugs and vitamins, use electrical apparatus or engage in forms of treatment that is considered by them as belonging to the medical rather than the chiropractic profession. Defendants, including American Chiropractic Association (ACA), are alleged to be practitioners and advocates of the "mixed methods" school of chiropractic practice, utilizing techniques that the fundamentalist or "pure" chiropractors regard as outside the practice of chiropractic.

In the complaint filed May 13, 1977, defendants are accused in Count I of violating 42 U.S.C. § 1983[2], in deprivation of the civil and constitutional rights of the plaintiffs, and in Count II of violating the Sherman Act, to the alleged competitive injury of the plaintiffs. Defendant ACA moves that Count I be dismissed for failure to state a claim upon which relief can be granted and for lack of jurisdiction over the subject matter; insist that Count II should be dismissed for failure to state a claim.

ACA has answered the complaint. Initially, ACA entered a general denial. However, for the purposes of this motion, this will assume that the allegations of the complaint are true.

---

1. Fed.R.Civ.P. 8(a) provides: General Rules of Pleading

 (a) Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

2. Infra.

Plaintiff's "Count II" attacks those of defendants' activities that have to do with the dissemination of information and views, to public bodies, the chiropractic profession, students and the general public, as to various methods and techniques of practicing chiropractic. Defendant positions that it is not only in the public interest that such a process of education and discussion continue to take place, but the dissemination of such views and information is protected by the First Amendment to the U.S. Constitution; maintain that plaintiffs have not been deprived of any constitutional rights. They argue that if plaintiffs' claim for injunctive relief and damages is granted, this would only serve to deprive defendants of First Amendment rights, to the detriment of the public.

## AS TO COUNT I OF THE COMPLAINT

42 U.S.C. § 1983, under which Count I of this action purports to be brought, reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

This statute confers rights on the parties, but does not confer jurisdiction on the courts. Jurisdiction is controlled by 28 U.S.C. § 1343(3)[3], which provides that the district courts shall have original jurisdiction of any civil action of the kind authorized by Section 1983; see *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

**3.** 28 U.S.C. § 1343(3) provides: Civil rights and elective franchise

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . . . .

Plaintiffs do not allege that any act of Congress has been violated by defendants. Therefore, for plaintiffs to prevail, they must establish, first, that they have been deprived of a right or rights secured by the Constitution of the United States and, second, that such deprivation was caused by a person/persons acting under color of State law.

This court determines that plaintiffs have failed to meet either of the two necessary conditions for the application of Section 1983, and that Count I must be dismissed for lack of subject matter jurisdiction. Count I should be dismissed for the additional reason that it fails to state a cause of action, because the challenged activities of defendant ACA are in fact nothing more than its legitimate expression of the rights of free speech and political petition guaranteed it by the First Amendment to the United States Constitution.

## SUBJECT MATTER JURISDICTION

■ Plaintiff's fundamental premise is that they have a constitutional right to practice not only chiropractic, but their special form of "pure" and "fundamental" chiropractic practice. An impressive line of Supreme Court and other cases show nothing could be further from the fact. The regulation of who may or may not practice a profession, and under what terms and conditions, lies completely within the police power of the state and raises no constitutional question.

In *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963), the Supreme Court held that it was not a violation of either the due process clause or the equal protection clause of the Fourteenth Amendment for a state to make it a misdemeanor for any person other than a lawyer to engage in the business of debt adjustment. The Court said that:

> (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation. [p. 729, 83 S.Ct. p. 1030].

█ The constitutional claims asserted by plaintiffs are "plainly unsubstantial", *Levering & Garrigues Co. v. Morrin*, 289 U.S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062 (1933); *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579, 24 S.Ct. 553, 48 L.Ed. 795 (1904); *Bailey v. Patterson*, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), and must therefore be dismissed on the ground that the Court lacks jurisdiction to entertain them, *Hagans v. Lavine*, supra. As the Supreme Court summed up there:

Over the years this court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are "so attenuated and unsubstantial as to be absolutely devoid of merit." [415 U.S. pp. 536–7, 94 S.Ct. p. 1379].

The unsubstantiality of plaintiffs' constitutional claims and others of a similar nature is the subject of a long unbroken line of Supreme Court decisions upholding as constitutional ·the exercise by the states, under their police power, of the power to prescribe the qualifications of who shall practice medicine, using that term in its widest sense to include all the healing arts. See *Dent v. West Virginia*, 129 U.S. 114, 9 S.Ct. 231, 33 L.Ed. 623 (1889); *Reetz v. Michigan*, 188 U.S. 505, 23 S.Ct. 390, 47 L.Ed. 563 (1903); *Watson v. Maryland*, 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed. 987 (1910); *Collins v. Texas*, 223 U.S. 288, 32 S.Ct. 286, 56 L.Ed. 429 (1912) (osteopaths); *McNaughton v. Johnson*, 242 U.S. 344, 37 S.Ct. 178, 61 L.Ed. 352 (1917) (ophthalmologist protesting exclusion from optometry); *Crane v. Johnson*, 242 U.S. 339, 37 S.Ct. 176, 61 L.Ed. 348 (1917) (drugless practitioners); *Douglas v. Noble*, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590 (1923) (dentists); *Graves v. Minnesota*, 272 U.S. 425, 47 S.Ct. 122, 71 L.Ed. 331 (1926) (dentists); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955) (optician prohibited from filling lenses except on written prescription of ophthalmologist or optometrist).

The constitutional authority of the states to regulate the practice of the healing professions includes the power of the legislature to set up licensing boards to admit persons into or exclude them from the profession, *Reetz v. Michigan*, 188 U.S. 505, 23 S.Ct. 390, 47 L.Ed. 560 (1903); *Watson v. Maryland*, 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed. 987 (1910); *Collins v. Texas*, 223 U.S. 288, 32 S.Ct. 286, 56 L.Ed. 439 (1912); *Crane v. Johnson*, 242 U.S. 339, 37 S.Ct. 176, 61 L.Ed. 348 (1917); *Douglas v. Noble*, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590 (1923), and to require that their practitioners graduate from an accredited school or have mastered a prescribed body of knowledge, *Dent v. State of Virginia*, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889); *Watson v. Maryland, supra; Crane v. Johnson, supra; Douglas v. Noble, supra; Graves v. Minnesota*, 272 U.S. 425, 47 S.Ct. 122, 71 L.Ed. 331 (1926).

The chiropractic profession is not any different from the other healing arts. This is abundantly demonstrated by a case very similar to the present one, *New Jersey State Society of Naturopaths v. State Board of Medical Examiners of New Jersey*, 79 F.Supp. 327 (D.N.J.1948). There plaintiff chiropractors contended that they had been excluded from practicing their calling by the actions of the New Jersey Legislature and the New Jersey Licensing Board, and were required under the statute to be examined in certain phases of the medical sciences which they regarded as "being unnecessary for the practice of chiropracty". The chiropractors specifically challenged (as plaintiffs challenge here), the right of the State of New Jersey to control the practice of medicine by means of its licensing system; to determine the accreditation to and regulation of schools concerned with instruction in the healing arts; and to establish standards for such schools and for applicants for licenses to practice the healing arts. In a refreshing analysis of facts and the law, the court held that the chiropractors had not presented a substantial consti-

tutional claim, and that the case should therefore be dismissed.

Plaintiffs' principal charge in this case is that defendants have been "promoting and encouraging the [chiropractic] profession to adopt and encroach in the field of the medical profession."[4] They single out as a particularly serious example of this encroachment on the medical profession that the ACA "are out to restore in the various states naturopathy, and place a discredited and abolished practice under the profession of Chiropractic."[5] It is therefore ironic to note that, in *Blass v. Weigel*, 85 F.Supp. 775 (D.N.J.1949), the naturopaths urged upon the Court (as do plaintiff chiropractors here) that their discipline is unrelated to and in fact antagonistic to the theory and practice of general medicine. Accordingly, they argued that they had been deprived of their constitutional and civil rights by being forbidden from engaging in their calling and by being required to be examined in phases of the medical sciences which they regarded as unnecessary for the practice of naturopathy. The Court held that these allegations presented no substantial constitutional claim, relying on a

> long line of decisions [that] have upheld the right of a state to regulate the practice of medicine and the allied professions; to designate, limit or restrict what shall constitute the practice of medicine and the allied sciences; to authorize an administrative agency to provide for the regulation of the practice of medicine and the allied sciences; and to enforce either the statutes of the state or regulations of the administrative agency. (pp. 779–80).

The Supreme Court of South Carolina and of other states have taken the same position as that of the United States Supreme Court. In *Dantzler v. Callison*, 230 S.C. 75, 94 S.E.2d 177 (1956), the Supreme Court of South Carolina held that a South Carolina statute which made it unlawful for persons to practice naturopathy unless they met certain prescribed qualifications did not deprive previously licensed naturopaths of

their property rights without due process of law, or deny them equal protection of the law. Hearing these Fifth and Fourteenth Amendment claims on appeal, the United States Supreme Court, *per curiam*, dismissed for want of a substantial federal question, 352 U.S. 939, 77 S.Ct. 263, 1 L.Ed.2d 235 (1956). This disposition carried behind it the weight of a full blown decision by the Court. "Votes to affirm summarily, and to dismiss for want of a substantial federal question, it hardly needs comment, are votes on the merits of a case . . . ." *Ohio ex re. Eaton v. Price*, 360 U.S. 246, 247, 79 S.Ct. 978, 979, 3 L.Ed.2d 1200 (1959).

In *Louisiana State Board of Medical Examiners v. Fife*, 162 La. 681, 111 So. 58 (1927), *writ of error denied*, 274 U.S. 720, 47 S.Ct. 590, 71 L.Ed. 1324 (1927), Louisiana's highest court held that Louisiana could constitutionally require all chiropractors to qualify in materia medica and surgery (qualifications imposed upon regular medical doctors), even though such a statute effectively destroyed the profession for those already in practice. Years later, a federal three-judge panel upheld the same law, *England v. Louisiana State Board of Medical Examiners*, 246 F.Supp. 993, 997 (E.D.La.1965), noting that the Louisiana Legislature was not shown to have acted "irrationally and unreasonably".

Considering the great number of Supreme Court cases which have uniformly upheld the right of state legislatures and of state licensing boards to engage in the activities challenged by the plaintiffs, the constitutional questions presented by plaintiffs are "no longer open to discussion" and are therefore unsubstantial, see *McGilvra v. Ross*, 215 U.S. 70, 80, 30 S.Ct. 27, 54 L.Ed. 95 (1909). Applying to these questions the test of unsubstantiality enunciated in *Levering & Garrigues Co. v. Morrin*, 289 U.S. 103, 105–6, 53 S.Ct. 549, 550, 77 L.Ed. 1062 (1933):

> [their] unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no

---

4. Paragraph 11 of Count I of the Complaint.

5. Paragraph 13 of the Complaint.

room for the inference that the question sought to be raised can be the subject of controversy.

See, *in accord, Hannis Distilling Co. v. Baltimore*, 216 U.S. 285, 289, 30 S.Ct. 326, 54 L.Ed. 482 (1910); *Ex Parte Poresky*, 290 U.S. 30, 32, 54 S.Ct. 854, 78 L.Ed. 1472 (1933); *Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973).

Since the constitutional questions presented in Count I are so patently unsubstantial and frivolous, the Count must be dismissed for lack of subject matter jurisdiction in the court.

## ACA ACTION UNDER COLOR OF LAW

■ In the long complaint plaintiffs fail to plead the essential statutory allegation that defendant ACA acted under color of state law, see *Seeley v. Brotherhood of Painters*, 308 F.2d 52 (5th Cir. 1962). Nor do they plead a single fact that would in any way show that ACA was involved in such state action. This failure alone justifies the dismissal of Count I for failure to state a cause of action.

Plaintiffs' failure in this regard is more than a defect in pleading; it is uncurable because there is no possibility of ACA acting under color of South Carolina state action. It is at least conceivable, although we believe correctly denied by their counsel, that the two South Carolina state chiropractic society defendants, headquartered in this state and with 150 South Carolina members (see pages 3 and 5 of the Complaint), might act under color of state law. But it defies belief that ACA a national trade association headquartered in Des Moines, Iowa, with no disciplinary powers at all over its members and with only 54 chiropractor members in South Carolina, could be so regarded. ACA is in no wise a governmental subdivision of the state.

None of the factors that the cases consider pertinent to the involvement of a private association or institution in State action applies to ACA. It has not been, and could not be, alleged in the complaint that:

(1) ACA is performing any public function for South Carolina, see *Evans v. New-ton*, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); *Simpkins v. Moses M. Cone Memorial Hospital*, 323 F.2d 959, 968 (4th Cir. 1963), *cert. denied* 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964); *Bond v. Dentzer*, 494 F.2d 302, 311 (2d Cir. 1974); *Powe v. Miles*, 407 F.2d 73, 80 (2d Cir. 1968); *Grafton v. Brooklyn Law School*, 478 F.2d 1137, 1140 (2d Cir. 1974).

(2) ACA is receiving any funds from or through the State of South Carolina, see *Sams v. Ohio Valley General Hospital*, 413 F.2d 826, 828 (4th Cir. 1969); *Simpkins v. Moses M. Cone Memorial Hospital, supra;* *Meredith v. Allen County War Memorial Hospital Commission*, 397 F.2d 33, 35 (6th Cir. 1968); *Stanturf v. Sipes*, 335 F.2d 224, 226–7 (8th Cir. 1964).

(3) ACA is not engaged in any conduct so entwined with a South Carolina governmental regulatory scheme as to implicate South Carolina in ACA's actions, see *Evans v. Newton*, 382 U.S. 296, 299, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); *Eaton v. Grubbs*, 329 F.2d 710 (4th Cir. 1964); *Adams v. Southern California First National Bank*, 492 F.2d 324, 331 (9th Cir. 1973).

(4) There is any "symbiotic relationship" between South Carolina and ACA, such as the Supreme Court said in *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) and *Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 357, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), was required to involve a private party in state action.

Plaintiffs have completely failed to meet the burden of proving, or of alleging, that ACA was acting under color of state law, because they have not shown or alleged that South Carolina had any "significant involvement" with ACA, see *Reitman v. Mulkey*, 387 U.S. 369, 380, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Adams v. Southern California First National Bank*, 492 F.2d 324, 329 (9th Cir. 1973). In fact, South Carolina has no involvement whatsoever with ACA.

For the reasons stated, Count I should be dismissed for want of subject matter jurisdiction, as well as for failure to state a cause of action.

### PLAINTIFFS ACTIVITIES ARE PROTECTED BY THE FIRST AMENDMENT

■ The methods by which the complaint alleges defendants are said to have carried out their alleged civil rights conspiracy involve: (a) the introduction and favoring of legislation [6]; (b) the domination and control of the Examining Boards of the various states of the Union and of the chiropractic schools, for the purpose of "promoting and encouraging the profession to adopt and to encroach in the field of the medical profession; and . . . eventually [to] cause the older membership and profession to become classified as 'quacks' or not certified chiropractors" [7]; and (c) the promotion of the purchase and use of intricate and expensive equipment, which ACA has allegedly done through advertisements circulated in interstate commerce.[8]

These allegations cover roughly the same ground as similar allegations made in Count II of the complaint. Under both counts, the activities complained of constitute the exercise by the defendants of their rights of free speech and of petition to public bodies and public officials, which are protected by the First Amendment to the Federal Constitution. See *Eastern R. R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 145, 31 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of America v. Pennington,* 381 U.S. 657, 670, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 decided by the Supreme Court June 27, 1977; *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 763, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). In order not to be repetitive, this court incorporates by ref-

erence here what will shortly be written as to Count II. There is added only the thought that in a case such as this, where the healing arts and public health are concerned, there is an enhanced public interest in the free and unfettered discussion of the issues and circulation of relevant educational and informational materials. Cf. *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), holding that a state may not prohibit paid in-state advertising of abortion services offered "out of state".

### COUNT TWO

■ Count II of the complaint charges ACA and the other defendants with violating the Sherman Act by injuring that class of chiropractors who do not prescribe vitamins and electronic and "other treatment which belongs to the medical profession and not to the chiropractic profession" [9] and "who do not practice and use what is known as mixed methods." [10] This it is alleged was done by (a) influencing and proposing legislation; (b) influencing and controlling the South Carolina Board of Chiropractic Examiners so as to cause the Board to license only the graduates of accredited chiropractic colleges; and (c) circulating advertisements.

Defendant has denied the allegations of the Complaint. Assuming them to be true, the challenged activities are no more than the exercise by ACA of the freedom of speech and right of petition guaranteed by the First Amendment to the Federal Constitution and, as such, are immune from attack under the Sherman Act.

Thus, the complaint charges ACA with "proposing legislation and promoting through the public media, the idea that practices of the plaintiffs are outdated and inadequate to serve the chiropractic needs of the public", and specifically with "attempting to pass in the South Carolina Leg-

---

**6.** Paragraphs 4, 5, 6 and 12 of the Complaint.

**7.** Paragraph 11.

**8.** Paragraphs 7, 11, and 14.

**9.** Paragraph 11.

**10.** Paragraph 10.

islature House Bill 2637," [11] which is attached to and made part of the Complaint as Exhibit D. Assuming *arguendo* that these allegations are true, the Supreme Court has unequivocally held that "[the Sherman Act is] not violated by . . . campaigns to influence legislation and law enforcement", see *Eastern R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 145, 81 S.Ct. 523, 533, 5 L.Ed.2d 464 (1961).

In the *Noerr* case, the truckers were suing the railroads for violating the Sherman Act, charging that the lobbying and political activity of the railroads with the legislatures had the anti-competitive purpose of destroying the truckers as competitors for the long-distance freight distance and involved the deception of the public and unethical conduct. The Court ruled that this was all irrelevant; that it was not the purpose of the Sherman Act to regulate political activity and nothing in its legislative history supported such an interpretation; and that to allow the Sherman Act to govern such political activity would raise important constitutional questions:

> . . . A construction of the Sherman Act that would disqualify people from taking a public position on matters in which they are financially interested would thus deprive the government of a valuable source of information and, at the same time, deprive the people of their right to petition in the very instances in which that right may be of the most importance to them. We reject such a construction of the Act and hold that, at least insofar as the railroads' campaign was directed toward obtaining governmental action, its legality was not at all affected by any anticompetitive purpose it may have had. (pp. 139–140) (underscoring supplied).

▪ Defendant ACA is also charged with attempting "to destroy and ruin any and all chiropractors who do not practice and use what is know as mixed methods", by dominating and controlling the examining board of the State of South Carolina in such a way that graduates of chiropractic schools other than those from four accredited schools have "little chance to pass an examination by said examining board . . . thereby stifling any and all competition from other schools in the United States." Assuming *arguendo* that these allegations are true, the Sherman Act is not violated, because, as the Supreme Court said in *United Mine Workers of America v. Pennington*, 381 U.S. 657, 670, 85 S.Ct. 1585, 1593, 14 L.Ed.2d 626 (1965), "*Noerr* shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose".

The *Pennington* case involved concerted efforts by the large coal producers and the United Mine Workers to have administrative agencies establish policies that were allegedly intended to eliminate their competition. The UMW and the large coal producers successfully undertook joint action to have the Secretary of Labor establish a minimum wage under the Walsh-Healy Act for employees of contractors selling coal to the T.V.A., which minimum wage was higher than that prevailing in other industries and made it difficult for small companies such as the plaintiff to compete in the T.V.A. term contract market. They also sought by concerted action to have the T.V.A. curtail its spot market purchases, a substantial part of which was exempt from the Walsh-Healy wage order and hence would have been available to smaller mining companies such as the plaintiff. The Court held:

> . . . Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not illegal either standing alone or as part of a broader scheme itself violative of the Sherman Act. (p. 670, 85 S.Ct. p. 1593).

▪ It should be borne in mind that the actions of the South Carolina Board of Chiropractic Examiners in granting or refusing to grant licenses to chiropractors is State activity. As such, it is immunized from

**11.** Paragraph 11 and 12.

antitrust attack under the rule laid down by the Supreme Court in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), and only recently reaffirmed by it in *Bates v. State Bar of Arizona*, 433 U.S. 350, ·97 S.Ct. 2691, Commerce Clearing House Trade Regulation Report No. 287, Part II.

 Finally, plaintiffs allege that defendants (without specifying which ones) have, in their campaign to discriminate against and to destroy them, caused advertisements to be circulated in interstate and intrastate commerce, including two promoting the use of the Spinolator electrical apparatus and the Sonilizer electrical apparatus, copies of which are attached to and made part of the complaint as Exhibits B and C. Taking these allegations as true, they are not prohibited by the Sherman Act because, as the Supreme Court pointed out in *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 763, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), and in the *Bates* case, *supra*, 433 U.S. at page 363, 97 S.Ct. 2691, at page 2698, commercial advertising is "entitled to the protection of the First Amendment". As the Court said in the *Bates* case:

. . . commercial speech serves to inform the public of the availability, nature, and prices of products and services, and thus performs an indispensable role in the allocations of resources in a free enterprise system. See *FTC v. Proctor & Gamble Co.*, 386 U.S. 568, 603–604 [87 S.Ct. 1224, 1242–1243, 18 L.Ed.2d 303] (1967) (Harlan, J., concurring). In short, such speech serves individual and societal interests in assuring informed and reliable decisionmaking. [See *Virginia State Board of Pharmacy v. Consumer Council, Inc.*] 425 U.S. at 761–765, 96 S.Ct. [1817], at 1825–1827.

For the foregoing reasons, Count II of the complaint should be dismissed for failure to state a cause of action.

The motion of defendant ACA is granted. Such defendant is dismissed as· a party to this action.

AND IT IS SO ORDERED.